**David Lee CISSELL, Plaintiff-Respondent,**

v.

**Curtis BROSTRON, Chief, St. Louis Metropolitan Police Department, and Andrew Aylward, Major, in charge of Bureau of Services, St. Louis Metropolitan Police Department, Defendants-Appellants.**

No. 31383.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1965.

Thomas J. Neenan, City Counselor of City of St. Louis, Eugene P. Freeman, Associate City Counselor, Conway B. Briscoe, Jr., Asst. City Counselor, St. Louis, for defendants-appellants.

Gruenberg, Schobel & Souders, John M. Schobel, St. Louis, for plaintiff-respondent.

DOUGLAS W. GREENE, Special Judge.

This case is an appeal from an order entered on June 7, 1962, by the trial court, enjoining the defendants (hereinafter referred to as appellants) from disseminating to any person or agency, including law enforcement agencies, any and all police reports, records, fingerprints, photographs and other documents which may be in their possession as the result of the arrest and investigation of the plaintiff (hereinafter referred to as respondent), on or about July 19, 1957, and to physically remove from the active files and the record division files of the St. Louis Metropolitan Police Department all of such records and reports and to place them in a private file which was not to be for disclosure.

The interesting facts that are the basis for this action are as follows: On July 19, 1957, respondent, David Lee Cissell, was arrested by officers of the St. Louis Metropolitan Police Department on suspicion of murder and robbery. At about 2:20 a. m. on that date, one Harry Wood, a customer in a restaurant on North Grand Boulevard was shot to death by a man attempting to

rob one William Meadows, who was a cook in the restaurant. Wood was attempting to prevent the holdup, and struck the robber with an iron pipe. The robber then shot Wood in the chest, inflicting a wound of which he later died, and then fled. Witnesses, who heard the shots, said the killer fled in a blue and white car with the chrome taken off the front to give it a custom look, and that he was wearing a vivid colored striped sport shirt.

At 2:40 a. m. respondent was arrested on Grand Avenue some distance north of the restaurant. He was driving a blue and white 1955 Plymouth with the chrome taken off the front, and he was wearing a vivid colored striped sport shirt. The arresting officers took respondent back to the restaurant where Meadows identified him as the holdup man. Respondent was thereafter indicted for first degree murder. He subsequently produced witnesses who testified that he was in Riverview Gardens, a St. Louis suburb, only a few minutes before the shooting, and could not have been at the scene of the crime at the time it was committed, and further investigation proved that the person who identified respondent as the killer had a history of mental illness, and was not a reliable witness. The prosecuting attorney then dismissed the murder charge against respondent. Respondent made bond shortly after his arraignment, and returned to work at the company where he was employed on the date of his arrest. He kept his job, until the fall of 1959, when he went on strike along with other workers, and was replaced on the job. In December of 1959, respondent applied for a job with the American National Insurance Company. He was interviewed for a job, and was asked to fill out an application. He stated on the application that he had been arrested, and submitted a story Front Page Detective magazine had written about his case to explain the circumstances. He did not hear further from the company regarding his application.

Respondent then applied to the Metropolitan Life Insurance Company, and before starting to fill out a job application form, told their personnel man the details of the arrest in question. He was told that there would be no sense in filling out the application. Respondent also filled out a job application form at McDonnell Aircraft. He listed the arrest in question on the application, and never heard from them. The events of the robbery and murder, the arrest of the respondent, and the eventual dismissal of charges against him were given prominent press coverage, including a feature story in one of the metropolitan newspapers. There was no evidence that appellants, or the St. Louis Metropolitan Police Department had ever released the records of the case, or any information concerning them, to anyone. On the contrary, the evidence indicated that respondent had publicized the facts himself in interviews with newspaper men and detective story writers.

The trial court, before deciding the case, stated that the purpose of its intended order was to permit respondent to state on any job applications that he might fill out, that he had never been arrested.

Appellants raise only two points on appeal. First, that the trial court abused its discretion in entering the order in question since respondent failed to prove, as he had pleaded, that retention of the records in question interfered with or damaged respondent's employment or property rights, and, second, that the trial court abused its discretion in rendering its decree and judgment enjoining the defendants, in their official capacities, from the proper performance of their duties, of directing and controlling the continuing investigation of the murder and robbery in question, through suppression of the entire documentary historical record of the activities of the police department in connection therewith.

Regarding appellants' first point raised on appeal, paragraphs 11 and 12 of respondent's petition are the only pleadings that al-

lege wrongdoing on the part of appellants. They read as follows:

"11. The fingerprints, photographs and other records of plaintiff on file with the said Police Department have interfered with and prohibited plaintiff in his pursuit of gainful employment. Plaintiff has been denied employment by prospective employers because of the retention of these records by defendants in the files of the said Police Department.

"12. Because of the actions of defendants in retaining said fingerprints, photographs and other records of plaintiff, plaintiff has suffered and will continue to suffer irreparable damage to his property rights and said action of defendants constitutes an infringement of and deprivation to plaintiff of the rights guaranteed to him by the Constitution of the State of Missouri."

There was no evidence offered in the trial court tending to show that the records of the case were ever shown to any prospective employer, or that any prospective employer relied on, or had access to, such records. In short, there was no proof connecting respondent's denial of employment with the records concerning him admittedly kept by the police department. There was no proof that the records in question were ever disseminated to *anyone*, or that there was a threat of future dissemination (with the exception that such records are sent to the state highway patrol pursuant to state statute.)

There was no proof that the keeping of such records by the police department caused respondent damage, or interfered with his pursuit of gainful employment.

■ In determining the issues here, we are guided by several elemental legal principles. The purpose of an injunction is to restrain actual or threatened acts which constitute a real injury, and is to be used sparingly and in clear cases only. The de-

cree is to be framed as to afford the relief to which the complainant is entitled, and not to interfere with legitimate and proper action on the part of those against whom it is directed. Henson v. Payne, Mo.App., 302 S.W.2d 44. In addition, the decree must conform not only to the evidence, but to the pleadings. Sinclair Refining Co. v. Wyatt, 347 Mo. 862, 149 S.W.2d 353; Murr v. Maxwell, Mo.App., 232 S.W.2d 219.

■ Under the pleadings, the ultimate questions for determination were: Did the retention of respondent's fingerprints, photographs and other records by the police department interfere with respondent in the pursuit of employment to his damage, and was respondent denied employment by reason of such retention.

A careful examination of the transcript does not disclose one iota of evidence to sustain such theories, and we therefore agree appellants' first point is well taken.

As to appellants' second point, it is evident from the record that the trial court entertained the view that through the device of an equitable decree, the fact that respondent had been arrested could be "obliterated" from the public realm, if the police investigational record was somehow given a judicial status of non-existence, and, thus give judicial sanction for the respondent to misrepresent the truth in connection with his employment efforts, i. e., to hide from prospective employers the fact that he had been arrested.

■ This cannot be done for several reasons. First, defendant was arrested, and was indicted, on the charge of first degree murder. Nothing that this court, or any court, could do would change such facts, regrettable as respondent feels they are. As is said in the words of the Prophet: "The moving finger writes, and having writ moves on, nor all your piety or wit, can lure it back to cancel half a line, nor all your tears wash out a word of it." Rubaiyat of Omar Khayyam, Verse 71. The purpose of an injunction is not to pro-

vide a remedy for past wrongs, but is to prevent future wrongdoing. Eichelsbach v. Harding, Mo.App., 309 S.W.2d 681.

Second, there is no evidence that appellants have disseminated, or threatened to disseminate respondent's photograph, fingerprints, and records to the general public, or to place them in a "rogues gallery." Therefore, such questions as the right of privacy of an individual in such situations, as discussed in State ex rel. Reed v. Harris, 348 Mo. 426, 153 S.W.2d 834, and related cases, are not germane to the pleaded and proved issues here. While this is an interesting subject, it is dehors the record, and precedent established by judicial pronouncement on such matters, many times results in the erection of a legal cross upon which judges, litigants and lawyers are later hung.

■ Third, any contemplated use of such records by the St. Louis Metropolitan Police Department, and other law enforcement agencies, in a continuing investigation of an unsolved murder would be justified by common sense. Such records contain many details, reports, statements, photographs, and other investigation aids in addition to respondent's record of arrest, and to deny their use in such manner would effectively tie the hands of the police, while affording respondent no real relief.

For the foregoing reasons the judgment is reversed, and the cause remanded with directions to enter judgment for the appellants.

WOLFE, P. J., and ANDERSON, J., concur.

RUDDY, J., not participating.