METMOR FINANCIAL, INC., et al., Melvin Scott Beck and Vickie Lynn Beck, Appellants,

v.

LANDOLL CORPORATION, and Tom Thomas, Sheriff of Platte County, Missouri, Respondents.

Nos. WD 53544, WD 53870.

Missouri Court of Appeals, Western District.

March 3, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1998.

Application for Transfer Sustained June 16, 1998.

Case Retransferred Oct. 20, 1998.

Court of Appeals Opinion Readopted Oct. 26, 1998.

---

Karen D. Wedel, Thomas R. Davis, Walters, Bender & Strohbehn, P.C., Kansas City, for Appellant Metmor Financial, Inc.

Mark G. Stingley, Mark A. Jess, Bryan Cave LLP, Kansas City, for Appellants Melvin Scott Beck and Vickie Lynn Beck.

Wm. Dick Fickle, Douglas P. Wilson, Fickle & Tharp, Platte City, for Respondent Landoll Corporation.

Before ULRICH, C.J., P.J., and BRECKENRIDGE and HOWARD, JJ.

ULRICH, Chief Judge, Presiding Judge.

Melvin Scott Beck, Vickie Lynn Beck ("the Becks"), and Metmor Financial, Inc. ("Metmor") appeal the decision of the trial court dissolving the temporary injunction in favor of the Becks and Metmor and denying the Becks' and Metmor's request for a permanent injunction to prevent the judicial sale of real property ("the Property") purchased by the Becks and financed by Metmor. The Becks raise two issues on appeal. They contend that the trial court erred by dissolving the temporary injunction prohibiting the judicial sale of the Property and in failing to find for the Becks on their declaratory judgment claims because (1) no judgment lien on the Property was created in favor of Landoll Corporation pursuant to section 511.500, RSMo 1994; and (2) Landoll failed to comply with the judicial sale requirements set forth in Rule 76.17. Metmor raises three issues on appeal. Metmor contends that the trial court erred by (1) failing to grant Metmor equitable subrogation so that it could retain first lienholder status over Landoll; (2) failing to grant a permanent injunction; and (3) refusing to make Metmor's requested factual finding regarding whether the sellers of the Property had committed fraud by selling the Property when they knew a judgment lien was going to be attached to the Property. The judgment of the trial court is affirmed.

## FACTS

Howard and Virginia Johnson resided in Kansas City, Missouri, in April 1992. The Johnsons obtained a line of credit for $100,000.00 with interest from Sterling National Bank on April 6, 1992, and pledged their real property in Kansas City ("the Property") as security for the loan. The Johnsons also executed an agreement not to sell or encumber the Property which was recorded with the Register of Deeds in Platte County on April 8, 1992, as security for the line of credit. As a result of these agreements, Sterling obtained a lien on the Property. The loan had a due date of April 6, 1993, which was subsequently extended to a maturity date of April 6, 1995.

Vickie Lynn Beck and Melvin Scott Beck are the daughter and son-in-law of the Johnsons. The Becks decided to purchase the Property from the Johnsons in April or May of 1995 for its appraised value, $115,000.00. The Becks applied to Metmor for a residential loan in the amount of $103,500.00 to purchase the Property on April 9, 1995. Metmor requires a first lien on residential mortgages, and the Becks agreed that Metmor would have the first lien on the Property. Metmor approved the Becks application on May 11, 1995.

Chicago Title obtained the closing documents for the loan from Metmor on May 12, 1995, including the Deed of Trust and a check for $101,832.23 to pay off the Sterling loan. Chicago Title sent the closing documents to the Becks on the same date. The Becks signed and returned the closing documents on May 13, 1995. On the Uniform Residential Loan Application included in the closing documents, the Becks acknowledged that Metmor was to have first lien on the Property. The Becks also executed the

Deed of Trust which represented that the Property was unencumbered. Additionally, Metmor instructed Chicago Title that it required first lien on the Property. Chicago Title received the closing documents from the Becks on May 15, 1995.

On the morning of May 15, 1995, the same day Chicago Title received the closing documents from the Becks, Landoll obtained a judgment against the Johnsons and their wholly owned corporation, International Trailer Sales, Inc., in the amount of $95,772.30 plus interest. This judgment was entered before Chicago Title received the closing documents from the Becks. The Landoll judgment was from a claim for an action on account against International and a claim for breach of the written guaranty against the Johnsons resulting from an extension of credit to International that the Johnsons had personally guaranteed. Landoll had extended International additional funds despite Mr. Johnson's history of financial problems with Landoll and his being in default when Landoll extended the additional credit. The Landoll trial date of May 15, 1995, was set on February 3, 1995. The Johnsons admitted that they knew of the trial date at least one week before May 15, 1995. The Becks admitted that they knew litigation was pending against the Johnsons but denied knowing that the litigation involved Landoll or that a judgment lien had been attached to the Property.

After the closing documents for the sale of the Property were executed by the Becks, Chicago Title met with the Johnsons on May 15, 1995, to execute the final sale documents. In the Sellers' Affidavit, the Johnsons represented that no actions were now pending in any court and that no judgments were pending against them.

Beverly Burnett, a Chicago Title employee, conducted a judgment search of the records of Platte County on May 16, 1995, to determine if any intervening judgments had been entered against the Johnsons. The judgment index of the Platte County Circuit Court contains a record of all judgments filed in the Platte County Circuit Court and is accessible to the public by means of a computer terminal in the civil records office. The Platte County Circuit Court also runs a magnetic back-up tape on a daily, weekly and yearly basis for all records entered, including abstracts of judgments. The tapes are kept in separate locations and are available for public inspection upon request. The Office of the State Courts Administer approved the judgment index of the Platte County Circuit Court.

Utilizing the computer search system of the Platte County Circuit Court to reveal judgments entered against parties, Ms. Burnett typed in "Johnson" as the last name and "Howard" as the first name. The search did not reveal the Landoll judgment. A search with "Johnson" as the last name and "Virginia" as the first name likewise did not reveal the Landoll judgment. The judgment was not revealed because the Platte County judgment index requires the input of different data when the lawsuit involves multiple parties. In order for the Landoll judgment to have appeared, Ms. Burnett would have had to type "Johnson, et. al." No instructions on the terminal referenced this fact, and Ms. Burnett did not know nor was she advised by the clerk's office who originally trained her that "et. al." must be typed to locate judgments with multiple parties. While Ms. Burnett had possession of the "issue docket," a printed docket kept by the circuit clerk, which referenced the Landoll judgment, Ms. Burnet did not cross-reference this list in her final search. Ms. Burnett did not request access to the magnetic back-up tapes of the Platte County Circuit Court. As a result, Ms. Burnett reported to Chicago Title that no outstanding judgments existed against the Johnsons.

Chicago Title recorded the Deed of Trust and Missouri Warranty Deed relating the sale of the Property from the Johnsons to the Becks on May 16, 1995. Chicago Title then disbursed the loan proceeds received from Metmor to Sterling Bank in payment of the Sterling loan following the sale of the Property. The Johnsons continue to reside at the Property, and the Becks continue to reside at their residence in Elliott City, Maryland.

Landoll sent a certified letter concerning the Landoll judgment to the Becks in an

envelope addressed to the Property. Landoll obtained this address from the Missouri Warranty Deed conveying the Property from the Johnsons to the Becks. This letter stated that Landoll planned to attach the Property and sell it to satisfy judgment against the Johnsons. The letter did not mention the time of the anticipated sale of the Property. Ms. Johnson accepted the letter addressed to the Becks on June 28, 1995, and faxed it to the Becks in Maryland that same day.

Landoll initiated execution proceedings to recover on the May 15, 1995 judgment on July 25, 1995. A Notice of Levy on the Estate and a Request and Order for Execution, Garnishment or Sequestration were mailed to the Johnsons, International, the Becks, and Metmor. A Notice of Sale was not among the mailed documents. Landoll subsequently sought to levy the Property by judicial sale scheduled September 12, 1995. Notice of the judicial sale was published in *The Landmark,* a local Platte City newspaper.

Metmor and the Becks filed a petition requesting declaratory and injunctive relief against Landoll on September 12, 1995, to prevent the judicial sale of the Property. The trial court temporarily enjoined the sale of the Property on September 12, 1995. The Becks filed their first amended petition on October 18, 1995, alleging that Landoll was not entitled to proceed with the judicial sale of the Property because Landoll failed to give proper notice of the sale. The Becks also sought declaratory judgment that Landoll did not have a valid lien on the Property and to enjoin Landoll from proceeding with the judicial sale. Metmor filed a second amended petition on November 16, 1995, seeking injunctive relief and a declaratory judgment on the same grounds asserted by the Becks. Metmor also argued that injunction was improper because of equitable subrogation and that Landoll lacked a valid lien on the Property because the judgment was not properly indexed in the Circuit Court of Platte County. The trial court dissolved the September 12, 1995 injunction and denied Metmor's and the Becks' request for a per-

manent injunction on October 7, 1996. This appeal followed.

## I. A JUDGMENT LIEN ON THE PROPERTY WAS CREATED IN FAVOR OF LANDOLL

As their first issue on appeal, the Becks argue that the trial court erred in dissolving the temporary restraining order and refusing to permanently enjoin the sale of the Property to satisfy Landoll's judgment against the Johnsons because no judgment lien was created in favor of Landoll under section 511.500, RSMo 1994. The Becks specifically argue that the statutory mandate of section 511.500 was not satisfied and, therefore, no lien against the Property resulted, because the Platte County Circuit Court Clerk did not enter an abstract of the Landoll judgment in a bound book and did not enter an abstract of certain information relating to the judgment in consecutively numbered entries in columns. Landoll argues, however, that the Platte County recording system complies with Supreme Court Rule 4.19, passed pursuant to the mandate of section 483.083, RSMo, 1994, and, therefore, a valid judgment lien was created.

Whether the Platte County recording system complies with the statutory mandate of section 511.500 is, therefore, determined. Section 511.500 provides that:

No judgment hereafter rendered by any court shall be a lien on real estate situate in such counties or city not within a county, until an abstract of the judgment shall be entered in a bound book which may be a printed computer record which shall be available for public inspection, to be kept by the clerk of the circuit court having jurisdiction of civil causes within a county or a city not within a county, and which shall state by consecutively numbered entries in columns: First, the names of the parties; second, the date; third, the nature of the judgment or decree; fourth, the amount of the debt, damages and costs; fifth, the book and page in which it is entered; sixth, the satisfaction or other disposition thereof, with the necessary space for notes thereon. The liens of all judgments entered in such bound book or

computerized record, as provided in this section, shall have priority according to the sequence of and from the time of its respective entry into the bound book or computerized record, such time being deemed within the period of time in which the abstract thereof should be furnished to or provided by the clerk of such circuit court under the provisions of this chapter.

■ § 511.500, RSMo 1994. "[Section 511.500] says, not that the judgment does not give notice to the world of its existence until it is properly indexed, but that the judgment is not a lien at all until it is properly indexed." *City of Belton v. Community Bank, N.A.*, 863 S.W.2d 345, 347 (Mo.App.1993).

■ The Becks contend the Platte County recording system fails to comply with section 511.500 because no abstract of the judgment was entered in a bound book as required by section 511.500. In making this contention, however, the Becks fail to recognize the import of section 483.082 which specifically empowers the Missouri Supreme Court to establish a different record keeping system than that mandated in section 511.500. Section 483.082 provides in relevant part:

Recognizing that improved methods and systems of keeping records and data have been and will continue to be developed from time to time and that all court clerks should be empowered to utilize improved methods, systems and techniques of keeping records of essential matters, and *notwithstanding the provisions of any other statute to the contrary*, the methods, form and systems of keeping all such files and records shall be as directed and approved by rule of the supreme court.

§ 483.082.2, RSMo 1994 (emphasis added).

Pursuant to section 483.082, the Missouri Supreme Court passed Administrative Rules 4.01–4.99. Rules 4.01–4.99. Of these rules, Rules 4.01 and 4.19, which both address the Supreme Court's mandate that a uniform record keeping system be imposed, are rele-

vant. Rules 4.01 and 4.19. Rule 4.01 provides:

There shall be a uniform record keeping system in the Circuit Court, which system shall be mandatory for the form, style, and maintenance of records dealing with civil, criminal, juvenile, and probate case activity and judgments.

Rule 4.01.1. Rule 4.19 provides that:

1. All records required by this rule may be kept and maintained by the following:

   (1) paper pages;

   (2) photography;

   (3) microphotography;

   (4) photostatic process;

   (5) electrostatic process;

   (6) magnetic tape or other electromagnetic means;

   (7) electronic data processing;

   (8) graphic or video display; or

   (9) other means as is approved by this Court.

2. All courts keeping records and information by any of the aforesaid means shall keep and have readily available to the public the necessary equipment to present the records and information in a readily readable form.

3. The records produced by any of the aforesaid means shall be true and accurate representations of the matter contained in the official court record.

Rule 4.19.

Analysis of the statutory requirements embodied in sections 511.500 and 483.082 and in Administrative Rules 4.01 and 4.19 reveal that the Platte County record keeping system complied with the statutory mandate of section 511.500 and section 483.082, and, hence, a valid lien was created in favor of Landoll. Section 483.082 specifically gives the Supreme Court the authority to direct methods of keeping files and records, "notwithstanding the provisions of any other statute to the contrary." Section 483.082, therefore, authorizes the Supreme Court to enact a filing system different from that mandated in section 511.500. Pursuant to the authority granted in section 483.082, the Supreme Court passed Administrative Rule 4.01–4.99.

Rule 4.01 directs that the circuit courts keep "a uniform record keeping system" for all "civil, criminal, juvenile, and probate case activity and judgments." The Supreme Court Administrative Rules were intended to supplant the requirements of section 511.500. Rule 4.01. Pursuant to the statutory mandate of section 483.082, the Platte County Circuit Court was obligated to adhere to the Supreme Court Rules regarding the "methods, form and systems of keeping all such files and records." § 483.082, RSMo 1994. An "alternative" record keeping method prescribed by Rule 4.19 is the use of a "magnetic tape or other electromagnetic means." Rule 4.19(6). By utilizing a magnetic tape to back-up its computer records, the Platte County Circuit Court utilized a method prescribed by Rule 4.19, and, therefore, complied with the statutory mandate of section 511.500. Accordingly, a valid lien in favor of Landoll was created when the judgment against the Johnsons was entered into the computer system and made accessible to the public. Point one is denied.

## II. THE BECKS HAVE FAILED TO SHOW PREJUDICE BY LANDOLL'S ALLEGED NONCOMPLIANCE WITH JUDICIAL SALE NOTICE REQUIREMENTS

As their second point on appeal, the Becks argue that Landoll failed to comply with the judicial sale requirements of Rules 76.17 and 76.16 and, therefore, the trial court erred by refusing to permanently enjoin the sale of the Property. The Becks specifically argue that Landoll failed to mail notice of the judicial sale to the Becks' last known address, failed to file proof of service with the court as required by Rule 76.17, and failed to include the requisite information in the notice of sale as required by Rule 76.16.

■ In order for an execution sale to be set aside for noncompliance with procedural requirements, the judgment debtor must first establish that the judgment creditor's noncompliance undermines the purpose of the rule. *Heintz v. Woodson*, 758 S.W.2d 452, 454 (Mo. banc 1988). The purpose of the rule requiring the judgment creditor to give notice to judgment debtors before their

land is sold is to provide maximum assurance that no landowner's property will be sold without such notice of sale as would ordinarily enable him to legally act to protect his interests. *Grate v. Richards*, 689 S.W.2d 635, 638 (Mo.App.1984). Second, the judgment debtor must establish that the judgment debtor was prejudiced by the noncompliance. *Heintz*, 758 S.W.2d at 454.

In *Heintz*, a judgment debtor sought to quash execution and/or stay the sale of his interest in certain real estate due to the creditor's failure to comply with Rule 76.17's mandate that proof of service of the notice of sale be filed with the court within five days of service. *Id.* at 453. The judgment debtor had received copies of the notice of sale. *Id.* The Missouri Supreme Court affirmed the trial court's denial of his motion to quash and/or stay the execution sale. The court reasoned:

Procedural rules are but the means through which we seek to ensure the fair and orderly resolution of disputes and to attain just results. They are not ends in themselves. For this reason, we do not generally consider noncompliance with rules or statutory procedures to warrant reversal in the absence of prejudice. Before setting aside an execution sale for noncompliance with procedural requirements, we must determine (1) whether the noncompliance undermines the purpose of the rule, and (2) whether the complaining party was prejudiced by the noncompliance. In this case the negative answer to both questions is obvious....[I]n view of appellant's admission that he received notice of the sale, the requirements of filing proof of service with the court became a superfluous technicality and made the time of filing such proof utterly irrelevant.

*Id.* at 454 (citations omitted).

■ Whether Landoll satisfied the judicial sale requirements of Rules 76.16 and 76.17 need not be determined because the Becks have failed to show the requisite prejudice. Rules 76.16 and Rule 76.17 require notice be given to the judgment debtor in order to "provide maximum assurance that no landowner's property will be sold out from under him without such notice of sale as would

ordinarily enable him to take action to protect his interests." *Grate*, 689 S.W.2d at 638. Here, as in *Heintz*, the purpose of Rules 76.16 and 76.17 were accomplished. The Becks admit they received timely notice; the Johnsons faxed the Becks notice of Landoll's intent to proceed with the judicial sale the same day that the Johnsons received the notice from Landoll. Further, the Becks promptly acted upon that notice by retaining counsel and seeking to have a temporary restraining order entered to prevent the judicial sale of the Property. Because the Becks received actual notice of the judicial sale and acted promptly to protect their interests, the purposes of Rules 76.16 and 76.17 were accomplished just as the purpose of the notice rules were satisfied in *Heintz* by the judgment debtors receiving actual notice and acting to protect their interests.

Further, the court's granting the Becks' request for a temporary restraining order, thereby preventing the judicial sale of the Property, shows that the Becks were not prejudiced by Landoll's alleged noncompliance with notice requirements. While the Becks allege that they did not receive notice of where the sale was to occur and the methods of payment authorized by Landoll as required by Rule 76.16, the Becks successfully prevented the sale from proceeding and, therefore, were not prejudiced by Landoll's alleged noncompliance with Rule 76.16. Because the Becks have failed to show Landoll's alleged noncompliance with Rules 76.16 and 76.17 undermined the purpose of those rules or that they were prejudiced by the noncompliance, the trial court did not err in denying their motion for permanent injunction. Point two is denied.

## III. METMOR IS NOT ENTITLED TO EQUITABLE SUBROGATION

As its first point on appeal, Metmor argues that the trial court erred by failing to apply the doctrine of equitable subrogation. Metmor specifically argues that equitable subrogation is appropriate because (1) it paid the Sterling lien obligation at the request of the Becks; (2) it intended to obtain first lien rights; (3) its failure to find the Landoll judgment was caused by its inability to find the judgment in the Platte County recording system despite conducting a reasonable search and by the Johnsons' fraudulent representations to Metmor that no litigation was pending against them; and (4) Landoll would not be prejudiced by application of the doctrine of equitable subrogation because Landoll would retain the same lien status as it would have had had Metmor not paid-off the Sterling loan.

■■■ The doctrine of equitable subrogation involves "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Kansas City Downtown Minority Dev. Corp. v. Corrigan Assoc. Ltd. Partnership*, 868 S.W.2d 210, 223 (Mo.App.1994)(quoting*State Sav. Trust Co. v. Spencer*, 201 S.W. 967, 969 (Mo.App.1918)). Originally a common law doctrine, subrogation has as its aim the advancement of justice and prevention of injustice. *Id.; Frago v. Sage*, 737 S.W.2d 482, 483 (Mo.App.1987). "Subrogation compels the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it." *Id.* Although available, subrogation is a fairly drastic remedy and is usually allowed only in extreme cases "bordering on if not reaching the level of fraud." *Landmark Bank v. Ciaravino*, 752 S.W.2d 923, 928 (Mo.App.1988). *See also Anison v. Rice*, 282 S.W. 497 (Mo.1955) (granting equitable subrogation where lender advanced money to pay off first deed of trust under threat of foreclosure at request of one joint owner where payment by lender benefitted equally the other joint owner); *Bunn v. Lindsay*, 95 Mo. 250, 7 S.W. 473 (1888) (refusing to allow equitable subrogation where lender provided money necessary to pay off first deed of trust and was unaware of intervening judgment lien of record and where judgment was recorded in public records and debtor failed to search public records because "a court of equity cannot relieve him by interfering with the legal rights of others who are without fault"); *State Sav. Trust Co.*, 201 S.W. at 967 (determining equitable subrogation was appropriate where borrower obtained money from lender through the use of forged instrument and where superior liens were no worse off

than they were before subsequent lender advanced his money to retire senior lien); *Baker v. Farmers' Bank of Conway*, 220 Mo.App. 85, 279 S.W. 428 (1926) (granting equitable subrogation where lender paid off three deeds of trust with understanding it would become first lien and where holder of fourth lien refused to subordinate its security). A party seeking equitable subrogation must prove by clear and convincing evidence that equity requires another party to bear the loss. *Corrigan*, 868 S.W.2d at 223; *Frago*, 737 S.W.2d at 483.

In *Landmark*, the Landmark Bank loaned money to owners of a parcel of residential real estate, the Danzigs, and secured the loan with a deed of trust on the property. *Landmark*, 752 S.W.2d at 924. The Danzigs then used the money borrowed from Landmark to pay off a second lien on the property. *Id.* The title company hired by Landmark failed to find and, thus, did not report the existence of a third lien on the property. *Id.* at 924–25. Landmark, therefore, held the third lien on the property rather than the second as it intended when it loaned the Danzigs the money. *Id.* at 925. Landmark asserted equitable subrogation should be granted and, hence, Landmark should have the second lien position. *Id.* The court disagreed, reasoning that "more is required to support an equitable subrogation than that the superior liens are no worse off than they were before the subsequent lender advanced his money to retire the senior lien." *Id.* at 928. The court then noted that "[i]n none of the cases in which subrogation has been ordered has the lender been allowed to advance ahead of a recorded lien in the absence of complicity by the superior lien holder in obtaining the loan." *Id.* The court also noted that the third lien holder was "totally innocent of any complicity in Landmark's mistake." *Id.* Therefore, the court affirmed the denial of Landmark's claim of equitable subrogation. *Id.* at 929.

◼ Here, too, Metmor has failed to show it is entitled to equitable subrogation. Although Metmor is correct in its contention that Landoll would be no worse off if Metmor were granted the superior lien position than if Metmor had never advanced the funds, as

the *Landmark* court noted, more is required for equitable subrogation than that superior liens are no worse off than they were before the subsequent lender advanced his money to retire a senior lien. *Id.* at 928. Here, as in *Landmark*, Metmor has failed to establish the existence of sufficient facts to warrant the application of equitable subrogation.

◼ As in *Landmark*, the title company hired by Metmor, Chicago Title, failed to find and, thus, did not report the intervening judgment against the Johnsons. While Metmor was unable to locate the judgment due to the nuances of the Platte County recording system, pursuant to the mandate of section 442.390, RSMo 1994, Metmor is, nevertheless, charged with constructive notice of Landoll's judgment just as the bank in *Landmark* was charged with constructive notice of the prior lien despite not locating the lien during the title search. *See also Bunn*, 7 S.W. at 473 (refusing to grant equitable subrogation where bank failed to find prior lien because bank is provided with constructive notice of lien). As the *Landmark* court noted, to hold otherwise would place in jeopardy the whole system prioritizing liens in Missouri. Metmor's inability to locate the Landoll judgment, therefore, does not support its claim for equitable subrogation.

◼ Additionally, while Metmor failed to discover the Landoll judgment in part because of the Johnson's representations that no actions were pending against them and that no judgments had been entered against them, that, too, does not affect Metmor's right to equitable subrogation. As noted by the court in *Landmark*, equitable subrogation is not granted in the absence of complicity by the superior lien holder in obtaining the loan. Here, as in *Landmark*, Landoll is totally innocent of any complicity in Metmor's loan to the Johnsons, and, therefore, Metmor may not be advanced ahead of Landoll. *See also Corrigan*, 868 S.W.2d at 223 (equitable subrogation not warranted where subsequent lenders did not defraud bank). While Metmor may have a cause of action against the Johnsons due to their misrepresentations, the Johnsons' misrepresentations do not make Landoll a guarantor for the Metmor loan. The trial court, therefore, was

correct in its determination that Metmor was not entitled to equitable subrogation. Point three is denied.

## IV. METMOR IS NOT ENTITLED TO PERMANENT INJUNCTIVE RELIEF

As Metmor's second point on appeal, it argues the trial court erred by failing to grant its request for permanent injunctive relief to grant Metmor first lien status. Metmor argues that permanent injunctive relief is warranted because (1) injunctive relief is appropriate to prevent the sale of realty in Missouri; (2) a sale of the Property would cause Metmor irreparable injury because Metmor possesses a superior claim to the Property; (3) balancing of the competing interests is in Metmor's favor because Landoll expected to have a secondary lien position while Metmor intended to have a first lien position; and (4) the public interest would be served because lenders should be allowed to have a first lien position when they repay the loan of a lender having first lien position.

The purpose of an injunction is to restrain actual or threatened acts that constitute a real injury. *Cissell v. Brostron*, 395 S.W.2d 322, 325 (Mo.App.1965); *Henson v. Payne*, 302 S.W.2d 44, 50 (Mo.App.1956). A permanent injunction should be granted sparingly in clear cases only, and the decree should be framed to afford relief to which complainant is entitled and not to interfere with legitimate and proper action by those against whom it is directed. *Id.* A permanent injunction acts as a final disposition of the merits of a case. *St. Louis Concessions, Inc. v. City of St. Louis*, 926 S.W.2d 495, 497 (Mo.App.1996); *Jackes–Evans Mfg. Co. v. Christen*, 848 S.W.2d 553, 556 (Mo.App.1993).

Having determined that a valid lien was created in favor of Landoll and that Metmor is not entitled to equitable subrogation, Metmor is not entitled to permanent injunctive relief. Because the Landoll judgment was entered before Metmor's lien attached to the Property, Metmor occupies second lienholder position. Metmor's rights in the Property, therefore, are first subject to the satisfaction of the Landoll judgment. As first lienholder, Landoll has a legal right to sell the Property by judicial sale, and, thus, satisfy the judgment against the Johnsons. Because Landoll has a legal right to sell the Property by judicial sale, Metmor is not entitled to the relief sought. A permanent injunction will not issue where the party seeking relief, Metmor, is not legally entitled to the relief sought. The trial court, therefore, did not err in denying Metmor a permanent injunction. Point four is denied.

## V. THE TRIAL COURT DID NOT ERR IN REFUSING TO MAKE METMOR'S REQUESTED FACTUAL FINDING REGARDING WHETHER THE JOHNSONS COMMITTED FRAUD

As its final point on appeal, Metmor argues that the trial court erred by refusing to make the requested factual finding regarding whether the Johnsons committed fraud. Metmor argues that whether the Johnsons committed fraud was central to their equitable subrogation claim and, hence, the trial court's refusal to make the finding was error.

Rule 73.01(a)(3) provides the circumstances under which a trial court should make findings of fact. It provides:

The court shall render the judgment it thinks proper under the law and the evidence. If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded. The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party.

Rule 73.01(a)(3). The failure of a trial court to make a requested factual finding is error where the court's failure to make the finding materially affected the merits of the action or interferes with appellate review of the legal issues. *Lopez v. Vance*, 509 S.W.2d 197, 204 (Mo.App.1974).

Whether the trial court erred by failing to making a factual finding regarding whether the Johnsons committed fraud, however, need not be determined because a fac-

tual finding that the Johnsons committed fraud had no legal effect on Metmor's right to equitable subrogation. Fraud or complicity by the *superior lien holder* in obtaining the loan may warrant the grant of equitable subrogation. *Landmark*, 752 S.W.2d at 928. Here, however, the superior lien holder, Landoll, did not commit fraud. Instead, the alleged fraud was committed by the judgment debtors, the Johnsons. Although the Johnsons' alleged fraudulent representations would be relevant in an action between Metmor and the Johnsons, those misrepresentations are immaterial in the action between Landoll and Metmor. The trial court's alleged failure to make a factual finding whether the Johnsons committed fraud, therefore, did not materially affect the merits of Metmor's action or interfere with appellate review of Metmor's points. Point five is denied.

The judgment of the trial court is affirmed.

All concur.