

# Missouri Court of Appeals
## Southern District

### In Division

GORDON BUNDY and )
MARLENE BUNDY, trustees of the )
Gordon G. Bundy and Marlene K. Bundy )
Trust dated December 13, 2017, )
)
        Appellants, )
) No. SD38365
  v. )
) **Filed: June 17, 2025**
BRETT RAPIEN and TRISHA RAPIEN, )
)
        Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

Honorable Robert Foulke, Judge

### VACATED AND REMANDED

Neighboring property owners sued each other over the use and maintenance of a gravel road running over a dedicated easement. Because the trial court misapplied the law in entering a judgment granting injunctive relief, we vacate the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## Background[1]

Mr. and Mrs. Rapien own property bounded on the southern edge by Highway 76. Near the eastern edge of their property runs a dedicated, 20-feet-wide, curving, ingress/egress easement topped by a gravel road (the "Road"). The Rapiens do not use the Road to access their home. Mr. and Mrs. Bundy own a home and property further back from the highway. They and other neighbors regularly use the Road to access their homes. The easement is non-exclusive and does not specify the standard to which the easement must be maintained or who shall maintain it.

The Road requires maintenance due to wear caused by vehicles driving on it. Portions of the Road are prone to wash-outs with heavy rainfall. The Road requires a fresh layer of gravel periodically.

From 2013-2017, the Bundys' predecessor in interest maintained the Road by smoothing out ruts and holes with a blade attached to his tractor. The Road was in poor condition when the Bundys purchased their home in 2017. Mr. Bundy has maintained the Road since 2018, using a blade attached to his tractor.

Mr. Rapien knew the Road had holes and occasional wash-outs, but he believed it required no major maintenance as it had always been "passable." The Rapiens did not perform road improvement or maintenance until about 2020, when they built and opened an event center. At that time, they hauled in some gravel, filled holes, and cut in a driveway off of the Road to the event center. In May of 2023, Mr. Rapien filled holes and attempted to put a crown on the section of the Road between the highway and their event center.

Use and maintenance of the Road were not problematic until after the Rapiens opened their

---

[1] We must view the facts in the light most consistent with the trial court's judgment. **Burg v. Dampier**, 346 S.W.3d 343, 347 n.1 (Mo.App. W.D. 2011).

2

event center, the driveway for which is approximately midway between Highway 76 and the southern edge of the Bundys' property. The event center has increased the number of vehicles using the Road between the highway and the event center, and event attendees occasionally have parked vehicles on or alongside the Road.

In the summer of 2021, the Bundys performed significant work on the Road. They hauled in and laid down red clay as a foundation, followed by gravel, which Mr. Bundy spread with the blade attached to his tractor. Mrs. Bundy thinks the improvements have minimized wash-outs.

The Rapiens were not pleased. They called the sheriff to have the clay delivery contractor removed from the property due to a previous harassment incident. According to the Rapiens, the clay and gravel layers were laid too thick, they were not properly compacted, and no crown was placed on the Road, all of which have resulted in poor water drainage, premature rutting, and increased wash-outs.

The Bundys filed suit, seeking to enjoin the Rapiens and their invitees from blocking or obstructing the Road and from interfering with the Bundys' maintenance of the Road and easement. The Rapiens counter-sued, seeking damages and to enjoin the Bundys and their agents "from taking any actions to alter the Easement Area, from using improper equipment and techniques on the Easement Area, and from allowing contractors on the Easement Area who engage in harassing behavior[.]"

At trial, the Rapiens' expert testified that the Road had not been properly maintained and it required repairs. He further testified that the Road had a good foundation, but additional truckloads of gravel were needed, and that gravel should be spread to place a crown on the Road.

Mr. Bundy testified he was not asking the court to require the Rapiens to maintain the Road. He wanted the court to enjoin the Rapiens' interference with his maintenance of the Road,

to permit him to trim bushes and shrubs growing over the Road, and to enjoin the Rapiens and their invitees from blocking the road.

Mr. Rapien testified his main dispute with the Bundys was over the location of the Road, as Mr. Rapien believed part of it was outside the easement. Mr. Rapien testified he never told Mr. Bundy he could not maintain the Road, but he did not want Mr. Bundy to use certain methods on the portion of the Road leading up to the event center. "Beyond my venue, it's his property. He can do whatever he wants." Mr. Rapien did not agree to maintain the Road or to be the sole arbiter of how to maintain it:

> [Bundys' counsel] Q. Is it your intention, sir, to maintain the road from the highway to your venue?
>
> [Mr. Rapien] A. I never said that.
>
> Q. What -- how do you propose to the Court to share the responsibility on maintenance of this road?
>
> A. I don't have -- well, what I don't want is the road to be maintained improperly. That's what I'm trying to stop.
>
> Q. But if the road is -- if no one is going to maintain the road, how's that going to -- for anyone to use it? I mean how – I'm looking for an answer here and --
>
> A. Well, continual incorrect maintenance of a road doesn't help. That makes the road worse. So in order to go forward and make the road better, firstly you have to stop making it worse.
>
> Q. And -- but how do you decide when it's time if Mr. and Mrs. Bundy are, you know, hitting ruts with their vehicle, do you expect them not to attempt to maintain the road?
>
> A. I don't expect that, and I've never stopped them.
>
> Q. So you didn't stop them when [the clay contractor] was there?
>
> A. I stopped them from doing the road incorrectly is what my intention was, yes.
>
> Q. In your opinion --

4

A.  If he wants to do it correctly, I have no problem with that.  But doing it incorrectly, I have a problem with.

Q.  And you're the one who determines correctness?

A.  I have a fair good idea of what correct is, but no, I shouldn't be the only one that determines that.

Mr. Rapien further testified he wanted the court to enjoin the Bundys from altering the Road in the future and "performing maintenance in a manner that further damages the roadway," and to enjoin the use of the contractor the Bundys hired for previous jobs.

After hearing the testimony and receiving evidence, the trial court enjoined the Bundys and their agents "from taking any actions to alter, maintain, park[] vehicles, [or] plac[e] posts or obstructions on the easement roadway" for the portion of the Road that runs from Highway 76 north to roughly the event center's driveway.  A reciprocal injunction was entered against the Rapiens for the portion of the Road from the Bundys' southern property boundary to the Bundys' residence.  From the event center driveway to the Bundy's southern property boundary, the Bundys are permitted to alter or maintain the Road, but only "with the hiring of a professional contractor AND approval of [the Rapiens]."  The Rapiens were required to take down posts installed along the Road, and all other relief was denied.

The Bundys appealed, claiming the trial court erred in permanently enjoining them from maintaining the easement because the relief granted was outside of the scope of the parties' pleadings and evidence, and because the court misapplied the law.

## Principles of Law

"[W]hether an injunction should be granted is a matter of the trial court's discretion in balancing the equities."  *Burg*, 346 S.W.3d at 357 (quoting *Doe I v. Phillips*, 259 S.W.3d 34, 37 (Mo.App. W.D. 2008)).  The trial court has broad discretion to "fashion [injunctive] relief to fit

5

the particular facts, circumstances[,] and equities of the case before it." ***Id.*** (quoting ***Schluemer v. Elrod***, 916 S.W.2d 371, 379 (Mo.App. S.D. 1996)). "In reviewing a court-tried equitable action, 'the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or unless it erroneously applies the law.'" ***Bates v. Webber***, 257 S.W.3d 632, 635-36 (Mo.App. S.D. 2008) (quoting ***Systematic Bus. Servs., Inc. v. Bratten,*** 162 S.W.3d 41, 46 (Mo.App. W.D. 2005)).

Missouri courts long have held that an injunctive decree must conform not only to the evidence but also to the pleadings. ***Sinclair Refin. Co. v. Wyatt***, 149 S.W.2d 353, 355 (Mo. 1941).

> To be entitled to an injunction, a party must demonstrate [that]: 1) [they have] no adequate remedy at law; and 2) irreparable harm will result if the injunction is not awarded. Moreover, injunctive relief is only available to require a party to do or to refrain from doing a particular thing.

***State ex rel. Schmitt v. Zill, Inc.***, 603 S.W.3d 327, 332-33 (Mo.App. W.D. 2020) (internal punctuation and citations omitted). "A permanent injunction should be granted sparingly in clear cases only, and the decree should be framed to afford relief to which complainant is entitled and not to interfere with legitimate and proper action by those against whom it is directed." ***Bates***, 257 S.W.3d at 636 (quoting ***Metmor Fin., Inc. v. Landoll Corp.***, 976 S.W.2d 454, 463 (Mo.App. W.D. 1998)).

In the absence of a written agreement to the contrary, as here, "the general rules on duties and rights of the respective tenants control." ***Marvin E. Nieberg Real Est. Co. v. Taylor-Morley-Simon, Inc.***, 867 S.W.2d 618, 623 (Mo.App. E.D. 1993). Those general principles of law were summarized in ***Stoesz v. Wright***:

> A roadway easement has been construed to afford a right of ingress and egress over a servient tenement. As in this case, where the roadway easement is created by deed, the owner of the dominant estate, which is the estate that benefits from the easement, has the right to maintain the easement in a condition for passage while the owner of the servient estate, which is the estate burdened by the easement,

is under no obligation to maintain or repair. Thus, by virtue of the grant of the roadway easement here, [the Bundys, in this case] have the express right to utilize the easement for ingress and egress and have the further right, if not the obligation, to maintain the easement.

At the same time, the owner of the servient estate retains the right of full dominion and use of the land affected by the easement. The [Rapiens, in this case] may control and use [their] property in any way that does not substantially interfere with the reasonable use of the easement by the easement holder. Whether the use of a non-exclusive easement by the [Rapiens] substantially interferes with the [Bundys'] use of the easement is a question of fact to be determined by the trial court.

541 S.W.3d 718, 722 (Mo.App. E.D. 2018) (internal punctuation and citations omitted). As to cost of maintenance when an easement roadway is used by more than one party, "the general rule is that all users should contribute to maintenance in proportion to their use." *Nieberg Real Est. Co.*, 867 S.W.3d at 623.

## Discussion

The first question we must address is whether injunctive relief was an appropriate remedy under the law, pleadings, and evidence elicited at trial. Some of the claims and counter-claims could fall within conflicts for which an injunctive remedy may be appropriate, *e.g.* obstructing the Road, placing posts alongside the Road, and future use of a contractor known to harass or annoy the Rapiens or their invitees. But the key issue below, and now raised on appeal, is the propriety of the judgment as to *maintenance* of the Road. On that issue, we conclude that injunctive relief was improper for two reasons.

First, the parties had an adequate remedy at law.

It is well settled that where there is an adequate remedy at law, a court lacks authority to grant equitable relief. This is because courts . . . are hesitant to create a new remedy when there is already an established remedy available or if existing doctrine can be revised to protect an inadequately protected interest.

*Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 16-17 (Mo. banc 2013) (internal punctuation and citations omitted).

7

Section 228.341 *et. seq.*[2] addresses maintenance of private roads like the Road at issue here. Section 228.369.1 provides a cause of action for a court-ordered plan of maintenance when parties are unable to agree in writing for a plan of maintenance, repair, or improvement of a private road subject to use by more than one homeowner or benefitted owner. Subsequent subsections of that statute provide a framework for establishment of a plan of maintenance, apportionment of costs, and future conflict resolution. Because Chapter 228 provides an adequate remedy at law to resolve private road maintenance conflicts, an equitable remedy was not authorized.

Second, the specific injunctive relief granted was outside the scope of the pleadings and evidence. We recognize that the trial court was in an unenviable position, with the parties proposing no concrete, workable solutions to the road maintenance issue. Sometimes a trial court must enter an order that conforms to the evidence and gives each side some of what they requested but ultimately leaves no party completely satisfied. That is not what occurred with this permanent injunction.

As is apparent from our recitation of the testimony and evidence at trial, no party sought or recommended what the trial court entered in its judgment. No party asked the court to completely prohibit the Bundys, a dominant estate owner with the "right, if not the obligation, to maintain the easement," *Stoesz*, 541 S.W.3d at 722, to be completely prohibited from maintaining a portion of the Road. No party asked the court to require the Rapiens or the Bundys to be completely responsible for maintaining different sections of the Road. No party asked the court to address maintenance of the gravel road running from the southern edge of the Bundys' property to their residence, which was not on the Rapiens' property and over which they had no easement. No party asked the court to enjoin maintenance or make a portion of the Road only maintainable

_____

[2] Statutory references are to RSMo (2016).

8

by anyone other than a third-party contractor, with the Rapiens to be the sole arbiters of which contractor to select. No pleadings or evidence showed a history of harassing behavior other than by one specific contractor, yet *any* contractor the Bundys may hire would be subject to the Rapiens' prior approval. Other homeowners who use the Road but have not maintained it remain free to undertake any maintenance they wish, yet the parties who have undertaken maintenance are limited in or precluded from future maintenance efforts. While a circuit court has broad discretion to fashion an equitable remedy, the permanent injunction issued in this case exceeded the scope of the pleadings and the evidence presented at trial, and was not sufficiently narrowly tailored to preclude interference "with legitimate and proper action by those against whom it is directed." *See Bates*, 257 S.W.3d at 636.

### Conclusion

Both sides have expressed a clear desire to have the Road maintained well. Both sides have undertaken efforts to maintain the Road with their own equipment and have purchased fresh gravel when they deemed it necessary. As guided by general Missouri law and more specifically § 228.342 *et seq.*, the proper function for a circuit court in this circumstance is to craft an order for future maintenance materials, standards, and methods, as well as apportionment of maintenance costs. Such an order also may address future road improvements, such as widening or changing the location of the Road, which Mr. Rapien testified was his "main dispute."

The trial court misapplied Missouri law by entering injunctive relief as to maintenance of the Road. A statutory remedy was available and the injunctive relief entered as to maintenance was beyond the scope of the pleadings and evidence presented at trial. The amended judgment

entered on September 5, 2023, is vacated and the case is remanded for further proceedings consistent with this opinion.[3]

JACK A. L. GOODMAN – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JENNIFER R. GROWCOCK, C.J. – CONCURS

---

[3] Because the judgment was vacated and the case remanded, we do not address other issues with the judgment. We remind the trial court and the parties that orders or decrees affecting real estate should describe the scope and location of the land in question with reasonable certainty, without proof from an external source or hand-drawn lines on an aerial map without further description. *See Sharp v. Crawford*, 313 S.W.3d 193, 201 (Mo.App. S.D. 2010) (reversal and remand required because deeds were referenced in the judgment but not incorporated or attached, and no legal descriptions provided); *Turkey Mountain Airport, Inc. v. Est. of Faler*, 82 S.W.3d 233, 235 (Mo.App. S.D. 2002) (case remanded because, *inter alia*, the only evidence of the location of a disputed roadway was a "free-hand" line drawn by a witness on a plat map without further description or reference); *Blackburn v. Richardson*, 849 S.W.2d 281, 292 (Mo.App. S.D. 1993) (judgment reversed and case remanded because, *inter alia*, it was uncertain, vague, and required reference to photographic exhibits); Missouri Supreme Court Rule 92.02(e) (2023) (order or judgment shall include reasonable detail and not by reference to another document).