[No. 45541-9-I.   Division One.   September 18, 2000.]

HU HYUN KIM, *Respondent*, v. STANLEY LEE, ET AL.,
*Defendants*, YAKIMA COUNTY TITLE COMPANY, *Appellant*.

*Michael F. Shinn*, for appellant.

*Nancy McKenney Allo* (of *Law Offices of Chae & Associates*), for respondent.

BAKER, J. — Yakima Title & Escrow failed to discover Hu Kim's judgment lien against Sharon and Stanley Lee,

owners of real estate subject to a deed of trust for which Yakima Title issued a title commitment and policy. Kim obtained a default order and judgment, and began to execute against the Lees' real property. Yakima Title defended its insured's lien position by filing a motion to intervene and a motion to quash the execution sale. The trial court granted the motion to intervene but denied the motion to quash. Yakima Title appeals, arguing that (1) Kim's judgment lien is ineffective for failure to comply with RCW 4.64.030, and (2) its insured, the refinance lender, has first lien priority over intervening judgment lien creditors under the doctrine of equitable subrogation. We hold that Kim's judgment lien was effective because it substantially complied with statutory requirements. But because we hold that Yakima Title's insured holds the first lien position under the doctrine of equitable subrogation, we reverse.

I

Kenneth and Yun Ok Chang bought a home in Yakima for their daughter and son-in-law, Sharon and Stanley Lee. Of the $165,000 purchase price, $130,000 was financed by a promissory note from Sterling Trust Company in the Changs' names at an interest rate of 10.5 percent.

Meanwhile, Hu Hyun Kim obtained a default judgment against the Lees in King County Superior Court. The judgment was recorded in Yakima County on May 16, 1997.

In December 1997, two years after purchasing the home, the Changs quitclaimed an undivided one-half interest in the property to the Lees. In March 1998, the Lees procured financing through Pioneer National Bank to pay off the underlying deed of trust granted by the Changs to the Sterling Trust Company. As part of the refinance, the Changs agreed to quitclaim their remaining undivided one-half interest to the Lees, so that the deed of trust was solely in the Lees' names. The Lees then executed a new promissory note, reducing their interest rate from 10.5 percent to 6.75 percent per annum. The entire refinance

loan proceeds were used to pay off the Sterling Trust Company deed of trust, plus settlement charges. When the Lees applied their home loan proceeds to pay off the Changs' debt in April 1998, Kim's judgment lien became the senior recorded lien.

Yakima Title & Escrow issued a commitment for title insurance insuring Pioneer's first lien position effective March 16, 1998, and updated in April 1998. Because Yakima Title failed to discover Kim's judgment lien, the commitment for title insurance did not mention Kim's judgment against the Lees. Pioneer wanted to immediately assign the loan to PHH Mortgage Services, so the policy did not issue until July 17, 1998, after Yakima Title was notified of the new lender's name and the deed of trust was properly recorded.[1] The policy did not mention Kim's judgment lien although by then Yakima Title and PHH knew of the lien.

Case law in Washington at that time held that any deed of trust encumbering property after entry of default judgment but before execution was to be counted as part of the "liens and encumbrances" under RCW 6.13.010 before arriving at a net property value that a judgment creditor could execute upon.[2] Therefore, Kim conceded that he was precluded from executing on his judgment at that time. However, in 1999 the Washington State Legislature amended RCW 6.13.010(3) to effectively change prior case law, thereby permitting Kim to execute on his judgment against the Lees' property.[3] Kim's counsel immediately notified Yakima Title that Kim would begin execution on the judgment. PHH had previously notified Yakima Title

---

[1] An attempt to record was made on June 17, 1998, but because the assignee lender was misnamed, the document was corrected and rerecorded on July 16, 1998.

[2] *Robin L. Miller Constr. Co. v. Coltran*, 87 Wn. App. 112, 119, 940 P.2d 661 (1997).

[3] RCW 6.13.010(3) states that "[a]s used in this chapter, the term 'net value' means market value less all liens and encumbrances senior to the judgment being executed upon and not including the judgment being executed upon." The amendment became effective on July 25, 1999.

that Kim would execute on his judgment lien as soon as possible. Yakima Title, as the agent for the policy issuer, accepted this notice as a tender of defense of PHH's lien position.

At Kim's request, the King County Superior Court issued a writ of execution on the Lees' real property in Yakima. Yakima Title moved to intervene and to quash the execution sale. Kim opposed these motions and filed a motion for CR 11 sanctions against Yakima Title. The trial court granted Yakima Title's motion to intervene, denied Kim's motion for CR 11 sanctions, and denied Yakima Title's motion to quash. Yakima Title now appeals from the denial of the motion to quash.

## II

■ The pertinent facts are not in dispute. The questions presented concern matters of statutory construction and the legal effect of actions taken by the parties. These are questions of law, which we review de novo.[4]

RCW 4.64.030(2) mandates that a succinct information summary shall appear "[o]n the first page of each judgment."[5] The statute further provides that "a judgment does not take effect, until the judgment has a summary in compliance with this section."[6]

Because Kim's judgment has a lengthy caption, the

---

[4] *Everist v. Department of Labor & Indus.*, 57 Wn. App. 483, 486, 789 P.2d 760 (1990); *ITT Rayonier, Inc. v. Dalman*, 67 Wn. App. 504, 507, 837 P.2d 647 (1992).

[5] The judgment summary must include: the judgment creditor and the name of his or her attorney, the judgment debtor, the amount of the judgment, the interest owed to the date of the judgment, and the total of the taxable costs and attorney fees, if known at the time of the entry of the judgment. If the judgment provides for the award of any right, title, or interest in real property, the first page must also include an abbreviated legal description of the property, including lot, block, plat, or section, township, and range; reference to the judgment page number where the full legal description is included, if applicable; and the assessor's property tax parcel or account number. If the judgment provides for damages arising from the ownership, maintenance, or use of a motor vehicle, the first page of the judgment summary must clearly state that the judgment is awarded pursuant to RCW 46.29.270 and that the clerk must give notice to the department of licensing as outlined in RCW 46.29.310.

[6] RCW 4.64.030(3).

summary information starts near the bottom of page one and continues on to the second page. Yakima Title argues that the judgment is ineffective because the express language of RCW 4.64.030 provides that no judgment takes effect until it has the mandatory first page summary, and that this unambiguous directive from the legislature is not subject to construction or interpretation. Kim points out that the judgment includes all of the statutorily required summary information in substantial compliance with the statute, and argues that RCW 4.64.030 does not explicitly void judgments that require more than one page to list the required information. Kim also contends that Yakima Title was not misled by the format of the judgment, because Stanley Lee's name appears in the caption on the first page, and competent professionals testified that ordinary efforts to search the record readily disclosed the judgment.

■ Strict compliance with legislatively mandated procedures is not always required.[7] Washington courts have long upheld actions taken in substantial compliance with statutory requirements, albeit with procedural imperfections.[8] Substantial compliance requires "actual compliance in respect to the substance essential to every reasonable objective of [the] statute."[9] We apply the doctrine of substantial compliance where appropriate because the distinct preference of modern procedural rules is to allow cases to proceed to a hearing on the merits in the absence of serious prejudice to other parties.

■ We hold that Kim's judgment was effective because it was in substantial compliance with the procedural mandate of RCW 4.64.030. The judgment summary began on the first page and contained all of the required information. Fur-

---

[7] *Fisher Bros. Corp. v. Des Moines Sewer Dist.*, 97 Wn.2d 227, 230, 643 P.2d 436 (1982).

[8] *Continental Sports Corp. v. Department of Labor & Indus.*, 128 Wn.2d 594, 603, 910 P.2d 1284 (1996); *Black v. Department of Labor & Indus.*, 131 Wn.2d 547, 552, 933 P.2d 1025 (1997).

[9] *City of Seattle v. Public Employment Relations Comm'n*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991).

thermore, the judgment was in actual compliance with the substantive purpose of RCW 4.64.030 despite the minor procedural imperfection. In 1987 the statute was amended to move the placement of the required summary from the end of the judgment to the first page.[10] The apparent purpose of the first page summary is to facilitate lien and title searches. There is no evidence that Yakima Title failed to locate the judgment because the summary continued to the second page. We do not think that the legislature intended strict compliance with RCW 4.64.030 where circumstances exist that would make it difficult or impossible to fit the entire judgment summary on the first page. The sole procedural error in the judgment—that the summary continued on to the second page—is not material under the circumstances.

## III

The primary question presented is whether the doctrine of equitable subrogation should be applied to restore the first lien position to PHH Mortgage Services, the refinance lender, over that of Kim, the intervening creditor.

■■ This is a matter of first impression in Washington.[11] The vast majority of jurisdictions that have addressed the doctrine of equitable subrogation in the context of mortgage refinancing view it favorably.[12] One commentator summarized the rule as follows:

"Where a lender has advanced money for the purpose of

---

[10] LAWS OF 1987, ch. 442, § 1107.

[11] There are two Washington cases discussing equitable subrogation in the real estate context, but they bear no relevant factual resemblance to the present case. *Altabet v. Monroe Methodist Church*, 54 Wn. App. 695, 777 P.2d 544 (1989); *MGIC Fin. Corp. v. H.A. Briggs Co.*, 24 Wn. App. 1, 600 P.2d 573 (1979).

[12] Carol Vento, Annotation, *Discharge of Mortgage and Taking Back of New Mortgage As Affecting Lien Intervening Between Old and New Mortgages*, 43 A.L.R.5th 519 (1996); *see, e.g. G.E. Capital Mortgage Servs., Inc. v. Levenson*, 338 Md. 227, 657 A.2d 1170 (1995); *Houston Inv. Bankers Corp. v. First City Bank*, 640 S.W.2d 660 (Tex. Ct. App. 1982); *Davis v. Johnson*, 241 Ga. 436, 246 S.E.2d 297 (1978); *Dodge City of Spartanburg, Inc. v. Jones*, 317 S.C. 491, 454 S.E.2d 918 (1995).

discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is that if he did so in ignorance of junior liens or other interests he will be subrogated to the prior lien. Although stressed in some cases as an objection to relief, neither negligence nor constructive notice should be material."[13]

The basis for equitable subrogation in this context is the lender's justified expectation in receiving security.[14] Thus, courts often apply equitable subrogation where the circumstances show that there was no intention that the original lien should be lost by the release of the original mortgage, and the junior lienholder will not suffer prejudice as a result.[15] These courts generally hold that equitable subrogation is necessary to prevent unjust enrichment of the judgment creditor were he to be elevated to a first lien position upon refinancing and discharge of the original mortgage.[16] However, the general rule of priority for the renewal mortgagee does not apply if there are "paramount equities in favor of the intervening lienor."[17] This may occur where the renewal mortgagee has been negligent and the innocent holder of the intervening lien would be placed in a worse position than he otherwise would have occupied if the original mortgage had not been released.[18]

The minority view, espoused in Missouri, strongly disfavors equitable subrogation and applies it only under extreme circumstances bordering on or reaching the level of fraud.[19] Under this view, "more is required . . . [for] equitable subrogation than that the superior liens are no worse

---

[13] *G.E. Capital*, 657 A.2d at 1172, quoting GEORGE E. OSBORNE, HANDBOOK ON THE LAW OF MORTGAGES § 282, at 570 (2d ed. 1970).

[14] GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 10.6, at 716 (2d ed. 1985).

[15] Vento, *supra*, 43 A.L.R.5th at 528.

[16] *G.E. Capital*, 657 A.2d at 1177.

[17] Vento, *supra*, at 529.

[18] *Id*.

[19] *Landmark Bank v. Ciaravino*, 752 S.W.2d 923, 928 (Mo. Ct. App. 1988).

off than they were before the subsequent lender advanced his money to retire [a] senior lien."[20] In Missouri even constructive notice of the intervening lien will defeat a claim of equitable subrogation.[21]

We expressly adopt the doctrine of equitable subrogation in the mortgage refinancing context in Washington. In cases involving the rights of insurers after payment of an insured claim, our courts have held that "[s]ubrogation is favored in Washington law" and that subrogation is "liberally allowed in the interests of justice and equity."[22] Given Washington's favorable view toward the doctrine of subrogation, there is no reason why we should not join the great majority of jurisdictions in applying equitable subrogation, where appropriate, to restore the first lien position of the mortgage refinance lender.

Our next task is to determine whether the doctrine of equitable subrogation should be applied here to elevate PHH over Kim to the first lien position formerly occupied by Sterling. Kim contends that he would be prejudiced if PHH were to obtain Sterling's lien position, because he would be deprived of his newly acquired first lien position. Kim also argues that equitable subrogation should not apply where Yakima Title had constructive notice of his properly recorded intervening judgment lien, and where Yakima Title's own negligence in failing to search the record caused the problem. We agree with Yakima Title that it is appropriate to apply the doctrine of equitable subrogation under these circumstances in favor of its insured, PHH.

The general rule favoring equitable subrogation for the refinance lender is not applicable where there are paramount equities in favor of the intervening lienor, particularly where the refinance lender has been negligent and the

---

[20] *Metmor Fin., Inc. v. Landoll Corp.*, 976 S.W.2d 454, 462 (Mo. Ct. App. 1998).

[21] *Id.*

[22] *Mahler v. Szucs*, 135 Wn.2d 398, 412, 957 P.2d 632 (1998).

innocent holder of the intervening lien would be placed in a worse position than he otherwise would have occupied if the original mortgage had not been released.[23] But mere lack of diligence in searching the record will not prevent application of equitable subrogation unless it rises to the level of "culpable and inexcusable neglect."[24]

Closely related to the matter of negligence on the part of the refinance lender is the effect of constructive or actual notice of the intervening lien. Because the basis for equitable subrogation in the context of intervening lienors is the refinance lender's justified expectation of receiving first lien security, most courts and commentators agree that constructive notice should be disregarded because it is irrelevant to the issue of the lender's expectations regarding lien priority.[25] Actual notice of an intervening judgment lien often bars subrogation,[26] although the *Restatement of Property* view is that any form of notice should be immaterial unless there is affirmative proof that the mortgagee intended to subordinate its mortgage to the intervening interest.[27]

We conclude that PHH is entitled to equitable subrogation. Most importantly, Kim has failed to show that he would be prejudiced by application of the doctrine. If PHH had not refinanced the loan, then Sterling would still be in the first lien position and Kim would remain in the number two lien position. Therefore, even after applying equitable subrogation, Kim is no worse off than he was before PHH advanced funds to pay off the senior lien held by Sterling. Permitting Kim to advance to the first lien position simply because of the refinance would confer a windfall on him. The refinance may even have enhanced

---

[23] Vento, *supra*, at 529; *see, e.g. Dedes v. Strickland*, 307 S.C. 155, 414 S.E.2d 134, 43 A.L.R.5th 847 (1992).

[24] NELSON & WHITMAN, *supra*, § 10.6, at 717; *see, e.g. Houston Inv. Bankers*, 640 S.W.2d at 663 (Tex. Ct. App. 1982).

[25] NELSON & WHITMAN, *supra*, § 10.6, at 716; OSBORNE, § 282, at 570; 3 RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.6 (1997).

[26] NELSON & WHITMAN, *supra*, § 10.6, at 716; *Dodge City of Spartanburg, Inc.*, 454 S.E.2d at 920-21.

[27] RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.6.

Kim's security because the Changs granted their remaining one-half interest in the property to the Lees as part of the refinance, thus enabling Kim's lien to attach to the whole property rather than an undivided one-half interest as before.

Kim's argument relies heavily on the minority Missouri view denying equitable subrogation for a lender charged with constructive notice.[28] But PHH clearly expected to receive the first lien position when it refinanced the loan, and we do not agree with minority view on this matter.[29] We acknowledge that Yakima Title has failed to provide any excuse for missing Kim's judgment lien in its search. Kim's experts testified that an ordinary search disclosed the lien, which suggests that Yakima Title's failure to discover it was negligent. But the record does not demonstrate that Yakima Title's failure amounted to anything more than ordinary negligence. If ordinary negligence or constructive notice were sufficient to defeat equitable subrogation, there would effectively be no such doctrine in this context. Under the circumstances of this case, PHH is entitled to equitable subrogation.

Kim next argues that allowing Yakima Title to prevail would render title companies superfluous because PHH is fully protected from any loss by its title policy. We disagree. Yakima Title is defending the rights of its insured, which is precisely what individuals and lenders pay for as part of their title insurance protection.[30] When PHH was notified of Kim's judgment lien, it immediately contacted Yakima Title and expressed concern that its lien position was threatened. Yakima Title has vigorously defended that lien position at its own expense, as required by the terms of its

---

[28] *Metmor*, 976 S.W.2d at 462; *Ciaravino*, 752 S.W.2d at 929.

[29] Because there is nothing in the record to indicate that Yakima Title had actual notice of Kim's lien when it issued its commitment for title insurance to PHH, we need not decide whether actual notice defeats an equitable subrogation claim.

[30] The policy permits Yakima Title to "use at its option the name of the insured for this purpose" (defending the rights of the insured).

title policy with PHH. Applying equitable subrogation here does not render title insurance unnecessary, because the policy covers the cost of legal defense, and insureds still require protection where no persuasive legal arguments are available to protect their interests. While it is undeniable that Yakima Title will benefit if PHH's lien position is restored, this fact does not bar application of equitable subrogation.

Kim also argues that equitable subrogation is not appropriate because PHH's loan to the Lees was not a true refinance transaction. Kim notes that the Changs, not the Lees, were obligors on the note owed to the previous lender. The Lees acquired a one-half undivided interest in the property by quitclaim deed from the Changs, then acquired the remaining one-half interest by a second quitclaim deed from the Changs in conjunction with the Lees' new loan. Yakima Title acknowledges that there is some resemblance to a purchase money transaction in that the refinance involved the judgment debtors' acquisition of full legal title to the home but contends that the transaction is principally a refinance because the Lees, not the Changs, occupied the home and made the monthly payments from the moment purchase was facilitated by Sharon Lee's parents.

Because the Changs were only nominally responsible for the original loan, and the benefits of both the original loan and the new loan inured to the Lees, we conclude that this loan transaction constituted a mortgage refinance. The Lees had a substantial interest in refinancing the home in April 1998 in order to reduce their home loan interest rate from 10.5 percent to 6.75 percent per annum, significantly reducing their monthly payments. The PHH loan was used solely to pay off the Sterling loan and associated costs. Furthermore, even though the Lees' names were not on the Sterling loan, they had a one-half interest in the property by quitclaim deed even before the refinancing occurred. Even though the original loan was in the Changs' names rather than the Lees', the behavior of the parties indicates that they intended the Lees to derive all benefits of the loan

and assume full responsibility for the monthly payments. The nature of this transaction does not prevent application of equitable subrogation.[31]

Finally, Kim argues that Yakima Title is not entitled to an equitable remedy because it has "unclean hands." According to Kim, Yakima Title falsified the nature of the transaction to the Yakima County treasurer by calling it a "gift" with no underlying debt or consideration so that no excise tax would have to be paid, even though it knew this was untrue. Kim also claims that Yakima Title issued a title policy to PHH after Yakima Title had actual knowledge of Kim's judgment, yet omitted mention of the judgment in the policy.

█ Courts will not apply equitable remedies on behalf of a party whose conduct in connection with the transaction has been unconscientious, unjust, or marked by want of good faith.[32] But "inequity practiced against a third person, who does not complain, does not close the doors of equity to a plaintiff guilty of no inequity as against a defendant."[33] Here, Kim asserts that Yakima Title committed a wrong against the Yakima County Treasurer by failing to require payment of the excise tax. Therefore, this action has no effect on application of equitable subrogation as between Kim and Yakima Title, regardless of whether Kim's accusations have merit. Regarding the title policy, Yakima Title had already issued a formal commitment to insure the first lien position of the refinance lender in April 1998 when neither Yakima Title nor the lender had actual notice of Kim's judgment lien. Once that commitment was issued, Yakima Title was obligated to insure and defend PHH, and it has done so willingly. There is nothing to indicate that Yakima Title attempted to hide the judgment lien from the

---

[31] Even if we were to conclude that the transaction was a purchase money transaction, the PHH lien would have first lien priority. Yancey Reser, Note, *Security Transactions*, 35 WASH. L. REV. 232, 233 (1960); NELSON & WHITMAN, *supra*, § 9.1, at 676-77.

[32] *Income Investors, Inc. v. Shelton*, 3 Wn.2d 599, 602, 101 P.2d 973 (1940).

[33] *McKelvie v. Hackney*, 58 Wn.2d 23, 32, 360 P.2d 746 (1961).

lender when this commitment was made. This argument does not bar application of equitable subrogation.

Reversed.

COLEMAN and APPELWICK, JJ., concur.

Review granted at 142 Wn.2d 1024 (2001).