[No. 61671-4-I.  Division One.  November 16, 2009.]

BANK OF AMERICA, NA, *Respondent*, v. J'AMY LYN OWENS
ET AL., *Appellants*.

*Jerry R. Kimball*; and *Catherine Wright Smith* (of *Edwards Sieh Smith & Goodfriend PS*), for appellants.

*Thomas S. Linde* (of *Schweet Rieke & Linde PLLC*), for respondent.

¶1 GROSSE, J. — A decree of dissolution is a judgment. A judgment creates a lien against real estate when the judgment is entered. Here, the supplemental decree gave Kenneth Treiger a lien for one-half of the proceeds of the sale of the property, less costs and the outstanding mortgage. In addition to entering and filing the judgment, Treiger recorded it before Bank of America obtained its judgment. Accordingly, the trial court erred in failing to give Treiger's lien priority over the Bank's lien.

## FACTS

¶2 This appeal is from the order entered in a declaratory judgment action filed, pursuant to an agreement referred to

as the "trust agreement," by appellant Kenneth Treiger, respondent Bank of America (Bank), Treiger's former wife J'Amy Lyn Owens, and two other parties who are not parties to this appeal. The parties filed the action to determine the amount and priority of the parties' claims to certain funds held in trust from the sale of real property, referred to as the "Maplewood property."

¶3 Treiger and Owens were married in July 1997 and separated on June 1, 2000. On June 26, 2000, Treiger and Owens purchased the Maplewood property as husband and wife. They filed for dissolution in February 2001.

¶4 In January 2002, during the pendency of the dissolution action but before entry of a decree of dissolution, Treiger filed a chapter 13 bankruptcy petition, which was converted to a chapter 7 bankruptcy in April 2002. In February 2002, Owens filed a separate chapter 11 bankruptcy petition.

¶5 The bankruptcy court in Treiger's case lifted the stay to allow the parties' dissolution action to proceed in superior court. The superior court entered a decree of dissolution on June 19, 2002 and reserved property and debt issues until the bankruptcy proceedings concluded.

¶6 In an adversary proceeding against Owens, Treiger's chapter 7 trustee obtained a bankruptcy court ruling that the Maplewood property was community property and therefore property of Treiger's bankruptcy estate.

¶7 While the parties were married, Owens, as part owner of a business called "The Retail Group," executed a promissory note and borrowing agreement in favor of the Bank. The Retail Group defaulted under the note and agreement, and the Bank filed a claim in Treiger's bankruptcy action.

¶8 In April 2004, nearly two years after entry of the decree of dissolution, Treiger's trustee and Owens entered into a settlement agreement in which the trustee agreed to convey his entire interest in the Maplewood property to Owens, subject to all liens of record against the property, in ex-

change for $215,000 from Owens. By trustee's quitclaim deed dated April 29, 2004, the trustee conveyed all of the bankruptcy estate's interest in the Maplewood property to Owens, "a single individual."

¶9 Treiger's chapter 7 case was closed in March 2005. Owens' chapter 11 case was dismissed in July 2005.

¶10 Treiger and Owens returned to state court to distribute the property in the dissolution. On May 9, 2006, the superior court entered a supplemental decree of dissolution, dividing their assets and liabilities. In the supplemental decree, the court ordered that the Maplewood property be sold and that Treiger be awarded one-half of the proceeds of the sale of the property. The court also ordered specified amounts to be deducted from Owens' share of the proceeds of the sale and awarded to Treiger. The supplemental decree contains a judgment summary identifying the Maplewood property by the assessor's property tax parcel or account number and identifying the money judgments awarded to Treiger.

¶11 On October 27, 2006, Treiger recorded a number of documents entitled "orders" or "decrees" that had been entered in the dissolution proceeding, including the supplemental decree. Treiger recorded the following documents on October 27, 2006:

1. "Order on Pre-Trial Motion" entered on March 21, 2006 and recorded under King County Auditor's Number 20061027001370 (Document 1370).

2. "Order on Attorney's Fees" entered on March 29, 2006 and recorded under King County Auditor's Number 20061027001371 (Document 1371).

3. "Supplemental Decree of Dissolution" entered on May 9, 2006 and recorded under King County Auditor's Number 20061027001372 (Supplemental Decree).

4. "Order on Motion for Attorney Fees" entered on June 9, 2006 and recorded under King County Auditor's Number 20061027001373 (Document 1373).

5. "Order on Show Cause Re Contempt/Judgment" entered on June 12, 2006 and recorded under King County Auditor's Number 20061027001374 (Document 1374).

6. "Order Requiring Appellant to File Complete Report of Proceedings" entered on July 18, 2006 and recorded under King County Auditor's Number 20061027001375 (Document 1375).

7. "Order Regarding Closing of Sale of Real Property Located at 10263 Maplewood Pl. S.W., Seattle and Distribution of Proceeds" entered on August 28, 2006 and recorded under King County Auditor's Number 20061027001376 (Document 1376).

¶12 In July 2006, the Bank filed an action against Owens, seeking payment of the debt she guaranteed. In November 2006, the Bank amended its complaint to add a claim "in rem" against any separate property of Owens awarded to Treiger. The trial court awarded the Bank judgment in the amount of $593,519.24. The Bank moved for a prejudgment writ of attachment on the Maplewood property. The trial court granted the Bank's motion and directed the issuance of a prejudgment writ of attachment on the Maplewood property against only Owens' interest in the property. A writ of attachment issued in accordance with the court's order and was recorded on December 20, 2006.

¶13 The Maplewood property was sold in May 2007. Because of the conflicting claims against the property or its proceeds, the title company would not insure the pending sale unless the parties with the claims entered an agreement allowing the sale to close. Accordingly, Owens, Treiger, the Bank, the title insurance company, Owens' attorney, and the trustee entered into an "Agreement Regarding Closing of Sale and Holding of Net Proceeds in Trust" (trust agreement). In the trust agreement, the parties agreed to execute the necessary documents to allow the sale to close and the title company to insure the purchasers' title. The parties also agreed that any of them could file a declaratory judgment action, naming the other parties as defendants and seeking a declaration regarding the priority and extent of the claims asserted by Owens, Treiger, the Bank, and Owens' attorney in the net sale proceeds held in trust by the trustee. The trust agreement recites, "Owens, as her separate estate, is the owner of the Property."

¶14 After the proceeds from the sale of the Maplewood property were placed in trust pursuant to the trust agreement, the Bank filed a declaratory judgment action to determine the priority of the parties' claims to the funds and the amount of those claims. On cross-motions for summary judgment brought by Owens, Treiger, and the Bank, the trial court concluded that the matter was controlled by the trust agreement in which the parties had agreed that the Maplewood property was Owens' separate estate. The court also concluded that apart from the money judgments, the supplemental decree did not grant Treiger a lien or other interest in the Maplewood property, but rather awarded him half of the proceeds from the sale of the property, "which is one-half of the monies received by Owens as the seller of the Maplewood [p]roperty after payment of all encumbrances including deeds of trust and recorded liens which attached to the Maplewood [p]roperty prior to the sale on May 20, 2007." The court ordered distribution of the net proceeds from the sale of the Maplewood property in the following order:

(1) payment of Owens' $40,000 homestead exemption;

(2) payment to Treiger of the four judgments he recorded on October 27, 2006 (Documents 1371, 1373, 1374, and the money judgments awarded in the supplemental decree);

(3) payment on the Bank's judgment lien which attached to the property pursuant to the prejudgment writ of attachment;

(4) payment to Treiger of other judgments entered and recorded after the Bank recorded its writ of attachment; and

(5) payment of any remaining amount held in trust to Treiger and Owens in accordance with the supplemental decree of dissolution or any other order entered in the dissolution proceeding.

¶15 Treiger appeals, arguing that the trial court erred by determining that the Maplewood property was Owens' separate property and by granting the Bank's prejudgment writ of attachment priority over Documents 1370, 1375, and 1376.

## ANALYSIS

### Characterization of the Maplewood Property

¶16 Treiger argues that the trial court erred not only by finding that the trust agreement governed the character of the Maplewood property but by characterizing the property after Owens purchased it from the bankruptcy estate as Owens' separate property. We disagree.

¶17 Central to Treiger's arguments is his allegation that the Maplewood property was community property even after his bankruptcy trustee quitclaimed the property to Owens. However, the character of property as community or separate is determined as of the date of its acquisition. Here, Owens acquired the Maplewood property after the entry of the decree of dissolution. Because Owens acquired the property outside of the marriage, it is her separate property.[1] Further, the conveyance by Treiger's bankruptcy trustee of the bankruptcy estate's entire interest to Owens by quitclaim deed vested title in Owens as her separate property.[2] Accordingly, the recital in the trust agreement that the Maplewood property is Owen's separate property is not, as Treiger argues, false. The trial court did not err by determining that the trust agreement correctly characterized the Maplewood property as Owens' separate property.

### Supplemental Decree of Dissolution

¶18 Treiger challenges the trial court's conclusion that, apart from the money judgments against Owens specified

---

[1] See RCW 26.16.010, .030.

[2] RCW 26.16.050 (allowing a spouse to convey to the other spouse his or her interest in community real property and providing that such conveyance operates to divest such real property from claims as community property and to vest the property in the grantee as separate property); see also In re Monighan's Estate, 198 Wash. 253, 255, 88 P.2d 403 (1939) ("The rule is that, when one spouse deeds a community interest in property to the other, the property becomes the separate property of the grantee spouse unless there is clear and convincing evidence that such was not the intention of the parties."). We find no such clear and convincing evidence of a contrary intent here.

in the supplemental decree, the decree did not grant Treiger a lien or other interest in the Maplewood property. We agree that the court's conclusion in this regard was error.

¶19 RCW 26.09.010(5) specifically provides that the term "[dissolution] decree" includes the term "judgment." "A judgment creates a lien against real estate in each county where the judgment is recorded."[3] Indeed, RCW 4.56.190 and .200 are quite specific. Section 190 provides:

> The real estate of any judgment debtor, and such as the judgment debtor may acquire, not exempt by law, shall be held and bound to satisfy any judgment . . . of the supreme court, court of appeals, superior court, or district court of this state, and every such judgment shall be a lien thereupon to commence as provided in RCW 4.56.200 and to run for a period of not to exceed ten years from the day on which such judgment was entered.

Subsection 200 further provides:

> The lien of judgments upon the real estate of the judgment debtor shall commence as follows:
>
> (1) Judgments . . . of the superior court for the county in which the real estate of the judgment debtor is situated, from the time of the entry or filing thereof.[4]

Moreover, the filing of the judgment constitutes constructive notice to third parties who deal with the judgment debtor with respect to the real property to which the lien attaches.[5]

¶20 Here, the supplemental decree granted Treiger, as his separate property, one-half the proceeds of the sale of the Maplewood property. The supplemental decree is a

---

[3] *BNC Mort. Inc. v. Tax Pros, Inc.*, 111 Wn. App. 238, 246, 46 P.3d 812 (2002); *see also* RCW 6.13.090.

[4] *See BNC Mort. Inc.*, 111 Wn. App. at 246; *see also* RCW 6.13.090.

[5] *Hartley v. Liberty Park Assocs.*, 54 Wn. App. 434, 438, 774 P.2d 40 (1989); *see also* 28 Marjorie Dick Rombauer, Washington Practice: Creditors' Remedies—Debtors' Relief § 7.7, at 88-89 (1998).

judgment that created a lien. Treiger's lien commenced on the date the supplemental decree was entered—May 9, 2006. While Treiger recorded the supplemental decree on October 27, 2006, this was not necessary.[6] The filing of the decree provided constructive notice to any subsequent purchaser.[7] The supplemental decree contained a reference to the assessor's property tax parcel or account number, as required by RCW 4.64.030(2)(b). Given the foregoing, the supplemental decree gave Treiger a judgment lien as a matter of law on one-half of the proceeds of the sale of the Maplewood property, after payment of the costs of sale and the outstanding mortgage, as outlined in that decree. Because Treiger's judgment lien was prior in time to the Bank's prejudgment writ of attachment, Treiger's lien was entitled to priority over the Bank's interest.[8] The trial court erred by failing to grant Treiger's lien priority.

*Other Orders*

¶21 The trial court determined that to the extent the supplemental decree awarded Treiger money judgments for past due child support, an Internal Revenue Service refund, and prior attorney fee awards, the supplemental decree had priority over the Bank's prejudgment writ of attachment. The trial court also gave priority to Treiger's liens as reflected in Documents 1371 (order awarding attorney fees), 1373 (order awarding attorney fees), and 1374 (contempt order) over the Bank's prejudgment writ of attachment. The Bank agreed below that these documents are judgments that attached as liens against the Maplewood property on October 27, 2006 when they were recorded, and are ahead in priority of the Bank's lien, which attached on December 20, 2006 when the Bank recorded its attachment levy. However, Treiger argues that the trial court also erred

---

[6] *See Hartley*, 54 Wn. App. at 438-39 (citing *Fed. Intermediate Credit Bank of Spokane v. O/S Sablefish*, 111 Wn.2d 219, 226-27, 758 P.2d 494 (1988)).

[7] *See Hartley*, 54 Wn. App. at 439.

[8] *See BNC Mort. Inc.*, 111 Wn. App. at 246 ("The lien first in time is the lien first in right.").

in not giving priority to Documents 1370 (order on pretrial motion), 1375 (order requiring appellant to file complete report of proceedings), and 1376 (order regarding closing of the sale of the Maplewood property priority over the Bank's lien). We disagree.

¶22 Not every order is a judgment. A judgment is "the final determination of the rights of the parties in the action and includes any decree and order from which an appeal lies."[9] An order is "[e]very direction of a court or judge, made or entered in writing, not included in a judgment."[10] A final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[11] A final judgment concludes the action by resolving the plaintiff's entitlement to the requested relief.[12]

¶23 Document 1370 is an order entered on a pretrial motion regarding Owens' failure to appear at trial and produce documents in response to a subpoena. This document did not resolve the litigation on the merits and did not determine Treiger's entitlement to relief.[13] It is an order, not a judgment. Document 1375 is an order directing Owens to arrange for the transcription of the report of trial proceedings and to file a supplemental statement of arrangements. Again, this document is an order, not a judgment. These orders did not create liens, and the trial court did not err by failing to give them priority over the Bank's lien.[14]

---

[9] CR 54(a).

[10] CR 54(b).

[11] *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1945).

[12] *Purse Seine Vessel Owners Ass'n v. State*, 92 Wn. App. 381, 387, 966 P.2d 928 (1998).

[13] Treiger was the plaintiff in the action in which this order was entered; Owens was the defendant.

[14] Treiger's reliance on *In re Deal*, 85 Wn. App. 580, 582, 933 P.2d 1084 (1997) is misplaced. The issue we face here, namely whether the documents purporting to create liens are in fact judgments, was not present in *Deal*. In that case, there was no question that the documents were judgments.

¶24 Document 1376 is an order that was entered prior to closing the sale of the Maplewood property. The order re-recites the award of the proceeds of the sale of Maplewood property as set out in the supplemental decree, except at the time this order was entered, the parties had a buyer and a sale price, so the order is more specific as to the amounts to be awarded than the supplemental decree. The order also recaps various prior awards of attorney fees and contempt judgments that were embodied in orders Treiger recorded before the Bank recorded its lien. In the order, the court also awards Treiger $6,151, representing his financial loss in the form of interest on his share of the sale proceeds because the property was not timely listed due to Owens' contempt and also awards him $10,000 as sanctions for Owens' contempt of court orders from June 27 through July 21, 2006.

¶25 It seems evident that, by its terms, Document 1376 is a judgment. It is the final order in the matter. It fully and finally disposes of the matter at hand, the dissolution of the parties. And, in recording it with the county auditor, Treiger treated it as such. The problem in this case arises because it does not appear on the execution document and the Bank claims this renders it unenforceable. While we have disposed of the argument that Treiger does not have a lien for one-half the sale proceeds, there remains the question of the priority of the other items specifically awarded in Document 1376. They are not insubstantial.

¶26 The Bank's argument puts at issue the meaning and scope to be given to RCW 4.64.030(3), which provides:

> If the attorney fees and costs are not included in the judgment, they shall be summarized in the cost bill when filed. *The clerk may not enter a judgment, and a judgment does not take effect, until the judgment has a summary in compliance with this section.* The clerk is not liable for an incorrect summary.[15]

---

[15] (Emphasis added.)

This language, if read to modify all of RCW 4.64.030, contradicts the directive of subsection (1) of the same section:

> The clerk shall enter all judgments in the execution docket, subject to the direction of the court and shall specify clearly the amount to be recovered, the relief granted, or other determination of the action.

It also appears to contradict RCW 6.01.020:

> For purposes of this title and RCW 4.56.190 and 4.56.210, a judgment of a superior court is entered when it is delivered to the clerk's office for filing. A judgment of a district court of this state is entered on the date of the entry of the judgment in the docket of the court. A judgment of a small claims department of a district court of this state is entered on the date of the entry in the docket of that department.

However, there may not be a conflict because RCW 6.01.020 provides that a judgment is entered when it is delivered to the clerk, not when it is filed. This provision is entirely consistent with the specifics of chapter 4.56 RCW discussed previously and, indeed, is consistent with RCW 4.64.030(1) that directs the clerk to enter all judgments in the execution docket as directed by the court.[16]

¶27 As discussed above, a judgment becomes a lien upon entry or filing, and while RCW 4.64.030 clouds the requirements of when the clerk must act to file it, it does not directly contradict other statutory provisions making clear that a judgment becomes a lien upon its entry. In the case of Document 1376, that occurred before the bank obtained and filed its writ of attachment. Moreover, Document 1376 was recorded before the writ of attachment. Hence, there is no question of constructive notice to the Bank.

¶28 Because we need not decide this question in this appeal, we will not engage in an analysis of the rules of statutory construction or the interesting legislative history

---

[16] The execution docket is what was commonly known as the "judgment rolls" or the "big gray books" that have been replaced by technology.

of RCW 4.64.030. We note, however, that construing subsection (3)'s dictate—that a judgment does not take effect until the judgment has a summary—to apply at most to judgments for attorney fees will suffice to avoid most questions.

¶29 We believe that the Bank's position is contradicted by statute and by the case law. In *Hu Hyun Kim v. Lee*,[17] the court held that in circumstances where strict compliance is impossible, substantial compliance is sufficient. Of significance to the *Kim* court was the fact that the judgment was in "actual compliance with the substantive purpose of [the statute]," which is to facilitate lien and title searches.[18] As the court explained:

> Strict compliance with legislatively mandated procedures is not always required. Washington courts have long upheld actions taken in substantial compliance with statutory requirements, albeit with procedural imperfections. Substantial compliance requires "actual compliance in respect to the substance essential to every reasonable objective of [the] statute." We apply the doctrine of substantial compliance where appropriate because the distinct preference of modern procedural rules is to allow cases to proceed to a hearing on the merits in the absence of serious prejudice to other parties.[19]

The legislative history supports the *Kim* position. The legislative history documents indicate that the amendments to RCW 4.64.030 were done at the urging of court clerks to "make[ ] their job[s] easier."[20]

---

[17] 102 Wn. App. 586, 9 P.3d 245 (2000), *rev'd on other grounds*, 145 Wn.2d 79, 31 P.3d 665 (2001).

[18] *Kim*, 102 Wn. App. at 592.

[19] *Kim*, 102 Wn. App. at 591 (alteration in original) (quoting *City of Seattle v. Pub. Emp't Relations Comm'n*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991)) (footnotes omitted).

[20] ENGROSSED S.B. REP. on Engrossed S.B. 1232, at 2, 56th Leg., Reg. Sess. (Wash. 1999). Engrossed S.B. 5449, 53rd Leg., Reg. Sess. (Wash. 1994) is the bill that added the language that eventually became subsection (3) RCW 4.64.030. H.B. 1232, 56th Leg., Reg. Sess. (Wash. 1999) is the bill that added subsection (2)(b), regarding judgments awarding an interest in real property.

¶30 In *Federal Intermediate Credit Bank v. O/S Sable-fish*, the court stated the issue as:

> ISSUE ONE. Can a judgment creditor enforce a judgment lien commenced pursuant to RCW 4.56.190-.200 against real property purchased from the judgment debtor by a purchaser for value without actual notice of the judgment, when the judgment was not recorded with the county auditor at the time of sale?[21]

The court concluded:

> CONCLUSION: A judgment lien on real estate is created by RCW 4.56.200 and when entered by a federal district court, commences upon real property in the county where the judgment is entered from the date of entry. Such entry serves as constructive notice to purchasers that a judgment lien has attached to a judgment debtor's property. While a judgment may also be separately filed for record in the county auditor's office, such recording is not necessary for the lien to be effective against purchasers of the property to which a lien has attached.[22]

This holding was reiterated in *Hartley v. Liberty Park Associates*,[23] a case almost directly on point. The *Hartley* court stated:

> A sum of money paid in the case of partition of unequal proportions for the purpose of equalizing the portions is an owelty, and may be allowed as a lien on the excessive allotment if payment cannot be made at once. *See Von Herberg* [*v. Von Herberg*], 6 Wn.2d [100,] 121[, 106 P.2d 737 (1940)]; 4 G. Thompson, *Real Property* § 1827 (1979 repl.); 59A Am. Jur. 2d Partition §§ 2, 257, 258 (1987). A judgment for owelty is an equitable lien in the nature of a vendor's lien, which will prevail over a declaration of homestead. *Adams* [*v. Rowe*], 39 Wn.2d [446, 448-49, 236 P.2d 355 (1951)]; *see also* 4 G. Thompson, *supra*; 59A Am. Jur. 2d, *supra* § 258. An award of owelty will become a lien on the partitioned property as established in RCW 4.56.190.

---

21 111 Wn.2d 219, 222, 758 P.2d 494 (1988).

22 *O/S Sablefish*, 111 Wn.2d at 222-23.

23 54 Wn. App. 434, 774 P.2d 40 (1989).

The Issaquah property is located in King County, and the decree of dissolution was filed in King County Superior Court. Pursuant to RCW 4.56.200(1), a judgment lien attached to the Issaquah property on March 30, 1984, the date the decree was filed. The filing of the decree provided constructive notice to any subsequent purchaser or mortgagee that the Issaquah property was encumbered by Michael's lien for $40,000 plus interest. *O/S Sablefish*, 111 Wn.2d at 223-25. While Michael could also have filed the decree as a lien in the county auditor's office, such recording was not necessary for the lien to be effective against purchasers of the property. *O/S Sablefish*, 111 Wn.2d at 226-27. Thus, Liberty Park had constructive notice of Michael's lien, and its deed of trust is subordinate to Michael's lien.[24]

This lien was apparently not filed as it does not appear in the execution docket. It was, however, entered and it was recorded. Hence, it was effective against the Bank's subsequent writ.

## Summary

¶31 A decree of dissolution is a judgment. Judgments become liens on real property when entered or filed. Even if we regard the supplemental decree here as essentially an equitable lien in the nature of an owelty, it is, nevertheless, a lien. Court orders may be judgments if they are final and dispose of all claims. In this case, the final order, Document 1376, was a judgment, and while it may not have been filed, it was entered and it was recorded and thus put the Bank on notice, effectively placing the Bank's writ in a subordinate position.

¶32 Owens' interest in the property was encumbered by all the judgments entered in this matter and the parties agreed to a process to determine priority. To the extent that the trial court determined that Treiger did not have an interest that "attached" prior to sale, it erred.

---

[24] *Hartley*, 54 Wn. App. at 438-39.

¶33 We reverse and remand for entry of judgment consistent with this opinion.

AGID, J., concurs.

¶34 Cox, J. (concurring) — I agree that the Maplewood property was the separate property of Owens at the time she signed the "Agreement Regarding Closing of Sale and Holding of Net Proceeds in Trust" (trust agreement). The trial court properly rejected her claim to the contrary. I also agree that the supplemental dissolution decree is a judgment that created a lien against the Maplewood real estate on May 9, 2006, the date of entry of that decree. I write separately to support reversal of this portion of the trial court's decision in order to clarify why Bank of America's claim to priority over this judgment lien is untenable. Lastly, because we need not reach the bank's argument that the failure of "Document 1376" to comply with RCW 4.64.030 affects the lien priorities in this case, I believe it is unnecessary to address that issue.

¶35 Our statutes make clear that a dissolution decree is a judgment.[25] Our statutes and case law also make clear that, upon entry, judgments become liens against the excess value over any homestead exemption of real property of the judgment debtor in the county where the judgment is entered.[26] A judgment lien constitutes constructive notice to all who deal with the real property subject to the lien.[27]

¶36 Here, the trial court entered its supplemental decree on May 9, 2006. The decree expressly awarded to Treiger:

> One half proceeds of the sale of the real property located at 10263 Maplewood Place Southwest, Seattle, Washington,

---

[25] RCW 26.09.010(5).

[26] RCW 4.56.190 and .200; 6.13.090; *BNC Mort. Inc. v. Tax Pros, Inc.*, 111 Wn. App. 238, 246, 46 P.3d 812 (2002).

[27] *Hartley v. Liberty Park Assocs.*, 54 Wn. App. 434, 438, 774 P.2d 40 (1989); *see also* 28 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES—DEBTORS' RELIEF § 7.7, at 88-89 (1998).

which has a gross value of at least $1,116,000 and one encumbrance with an approximate balance of $469,982.[28]

Accordingly, this decree created a judgment lien against Owens' real property—Maplewood—located in King County, Washington. That lien secures her obligation to pay Treiger one-half of the net proceeds of the sale of her property to the extent those proceeds exceed her claim of homestead. It follows that this judgment lien gave constructive notice to the bank of Treiger's interest in the real estate. More specifically, this May 2006 judgment lien established the priority of his lien over the bank's later lien, which was created by the recording of the prejudgment writ of attachment in the King County Auditor's Office on December 20, 2006.

¶37 The bank does not address the judgment lien statutes in its briefing. Rather, it focuses on the above-quoted language of the supplemental decree awarding Treiger "proceeds of the sale of real property." Seizing on that language, the bank characterizes Treiger's interest as nothing more than "an award of personal property," not "an express lien against the Maplewood property."[29] The implication is that Treiger has an interest only in personal property, not in the Maplewood real estate.[30] In making this argument, the bank heavily relies on *Kshensky v. Pioneer National Title Insurance Co.*[31]

¶38 There, Estera Kshensky and Ignac Kshensky were divorced in 1964.[32] The divorce decree awarded their Seattle residence to Ms. Kshensky as her sole and separate

---

[28] Clerk's Papers at 75.

[29] Brief of Respondent Bank of America NA at 26.

[30] *See Kshensky v. Pioneer Nat'l Title Ins. Co.*, 22 Wn. App. 817, 821 n.3, 592 P.2d 667 (1979) (suggesting that the proceeds of sale of a former marital residence was personal property that could be the subject of a levy under RCW 4.56.190 or could be secured by the filing of a financing statement under the Uniform Commercial Code).

[31] 22 Wn. App. 817, 592 P.2d 667 (1979).

[32] *Id.* at 818.

property.[33] The decree also stated that Mr. Kshensky had a lien on half of the proceeds of any sale of the residence in excess of $14,250, the price they had paid for the residence in 1958, provided he was living at the time of the sale.[34]

¶39 In 1977, Ms. Kshensky sold the residence to John Herrin for $61,000.[35] Herrin had no knowledge of the lien created by the 1964 divorce decree.[36] Pioneer National Title Insurance Company provided title insurance to Herrin, insuring him against unknown liens against the property.[37] Ms. Kshensky kept all the proceeds of the sale to Herrin and apparently left the country.[38]

¶40 Upon learning of the sale, Mr. Kshensky sued Herrin, Pioneer National Title Insurance Company, and others.[39] The trial court granted the defendants' summary judgment motion dismissing the action.[40]

¶41 On appeal, Mr. Kshensky argued that Herrin was obligated to pay him one-half of the proceeds of the sale above the $14,250 threshold amount based on the lien created by the language in the divorce decree.[41] This court disagreed, concluding that the lien of that decree attached only to the proceeds of sale and that Herrin was without notice of the lien and, thus, a bona fide purchaser of the real estate.[42]

---

[33] *Id.*

[34] *Id.* at 818 n.2 (" 'In the event [Ms. Kshensky] shall sell the above mentioned property at any future time for a total sales price in excess of $14,250.00, then [Mr. Kshensky] shall be entitled to a lien on the proceeds of such sale in a sum equal to one-half of the total sales price in excess of $14,250.00.' ").

[35] *Id.* at 819.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 819-20.

[42] *Id.* at 820-21.

¶42 *Kshensky* is distinguishable from this case both on the facts and the law. First, the *Kshensky* court did not consider or discuss the judgment lien statutes and case law that we have addressed in these opinions. Thus, that court did not rule on the question whether the divorce decree in that case created a judgment lien, by operation of law, against the real estate described in that decree. In contrast, we hold that the decree in this case created a judgment lien against the Maplewood real estate on the date of entry of the decree, May 9, 2006. Treiger, as a judgment lien creditor of Owens, has a fully perfected right to payment from the proceeds of sale of the real estate prior to payment of the bank's later-recorded lien.

¶43 Second, the purchaser of the property in *Kshensky* was a bona fide purchaser. Herrin had no notice of the lien created by the decree.[43] Unlike Herrin, Bank of America is not entitled to the status of a bona fide purchaser for two reasons. The first reason is that it had constructive notice of Treiger's judgment lien against Maplewood from May 9, 2006, the date of entry of the supplemental decree. The second reason is that the bank had further constructive notice of that judgment lien because Treiger **recorded** the supplemental decree in the King County Auditor's Office on October 27, 2006. That supplemental decree was of record in the auditor's office prior to the time the bank recorded its writ of attachment against Maplewood on December 20, 2006. Either the trial court's entry of judgment on May 9, 2006, or the recording of the supplemental decree in the auditor's office on October 27, 2006, was sufficient to establish the priority of Treiger's interest in Maplewood over the bank's later-recorded writ of attachment. In short, the bank's reliance on *Kshensky* is misplaced.

¶44 The lead opinion in this case observes, "While Treiger recorded the supplemental decree on October 27, 2006, this was not necessary." Lead op. at 125. This is true. Nevertheless, the recording of the supplemental decree in

---

[43] *Id.* at 819, 821.

the auditor's office on October 27, 2006 is an independent reason why we reverse the trial court's decision that the bank's writ of attachment has priority over Treiger's right to receive his share of the net proceeds of the sale of Maplewood.

¶45 Finally, the bank argues that the "Order Regarding Closing of Sale of Real Property," which the court entered on August 28, 2006 (Document 1376), does not comply with the provisions of RCW 4.64.030.[44] Specifically, the document lacks the judgment summary on its face page that the plain language of the statute requires.[45] Based on this defect, the bank claims that it is entitled to priority over this judgment.

¶46 As the lead opinion correctly observes, this order is a judgment that Treiger also recorded prior to December 20, 2006, the date the bank recorded its writ of attachment. Thus, the bank presumably had constructive notice of its contents, notwithstanding the failure of the document to comply with the plain words of the statute. Because the failure of the document to comply with the statute is irrelevant to the outcome in this case, there is no need to address the bank's argument that the absence of the judgment summary affects lien priority. Accordingly, I express no opinion on this issue.

¶47 Based on this analysis, I agree to reverse and remand for entry of judgment in favor of Treiger.

Review granted and review of issues raised in respondent's answer granted at 168 Wn.2d 1039 (2010).

---

[44] Brief of Respondent Bank of America NA at 31-34 ("The clerk may not enter a judgment, and a judgment does not take effect, until the judgment has a summary in compliance with this section." (citing RCW 4.64.030(3))).

[45] *See* RCW 4.64.030 (form of judgment summary).